**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, | No. CV-18-04189-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| American Fitness Wholesalers LLC, | |
| Defendant. | |

Pending before the Court is Defendant American Fitness Wholesalers LLC's ("Defendant") Motion to Dismiss (Doc. 16) pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1), 12(b)(6), and 9(b). (Doc. 16). The Court now rules on Defendant's motion.

## I. BACKGROUND

The Complaint (Doc. 1) asserts the following causes of action: (i) False and Deceptive Advertising in violation of the Lanham Act; (ii) Unfair Competition; (iii) False Patent Marking; and (iv) Civil Conspiracy. (Doc. 1 at 56–64).

### A. Facts

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Plaintiff ThermoLife International, LLC ("Plaintiff") is an Arizona-based company founded in 1998. (Doc. 1 at 5). Plaintiff "currently holds 23 separate and distinct patents that protect its innovative development and use of ingredients in Dietary

Supplements and food products." (*Id.*). Plaintiff "both licenses its patented technology for use in Dietary Supplements, specifically Sports Nutrition Supplements, and sells ingredients . . . for use in Dietary Supplements." (Doc. 19 at 5). "With few exceptions, anytime an amino acid is combined with nitrate(s) and sold and marketed to consumers[,] the product relies on [Plaintiff's] patented technology." (Doc. 1 at 5). Plaintiff also licenses and sells its patented creatine nitrate, which is an ingredient in the world's top-selling pre-workout product: Cellucor's C4. (*Id.* at 6).

Defendant, which conducts business as A1Supplements, sells dietary supplements to consumers over the internet. (*Id.* at 7). Defendant places advertisements for each specific product it sells on its website. (*Id.* at 7–8). Defendant lists "C4," which includes creatine nitrate sourced and licensed from Plaintiff, as its top selling pre-workout product. (*Id.* at 8). On its website, Defendant also sells creatine nitrate products that have no licensing connection with Plaintiff, including APS Nutrition's creatine nitrate product, which is advertised as "a vastly superior patented creatine [nitrate]." (*Id.* at 8–9).

Plaintiff alleges that Defendant is unfairly competing in the dietary supplement market through false advertising of products labeled as dietary supplements that contain ingredients the U.S. Food and Drug Administration ("FDA") labels as "drugs." (*Id.* at 8). Plaintiff alleges that 142 products advertised on Defendant's website contain such ingredients without any disclosure of the nature of the ingredients as "drugs." (Doc. 19 at 7). Every page of Defendant's website contains the disclaimer, "FDA: these statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." (Doc. 1 at 8). Plaintiff also alleges that Defendant falsely labels products on its website as "patented" when no patent applies to the product. (*Id.* at 6).

**II. DISCUSSION**

Defendant filed the pending Motion to Dismiss (Doc. 16) pursuant to Rule 12(b)(1) for lack of standing, and 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 16 at 2–3). Defendant also argues that Plaintiff's claims sounding in fraud

are subject to and fail to meet the heightened pleading requirements of Rule 9(b). (*Id.* at 2). Because the issue of standing presents a "threshold question of justiciability," the Court will address the parties' Rule 12(b)(1) standing arguments first. *See U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 747 (9th Cir. 1993).

### A. Article III Standing

Defendant argues that Plaintiff does not have standing under Rule 12(b)(1) to bring its claims. (Doc. 16 at 6).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498 (1975). In resolving the issue of standing, courts are bound by a constitutionally imposed jurisdictional restraint in Article III of the United States Constitution, which limits the "judicial power" of the United States to the resolution of "cases" and "controversies." *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 470–71 (1982). Under Rule 12(b)(1), a litigant may seek dismissal of an action for lack of standing because "Article III standing is a species of subject matter jurisdiction." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) (citation omitted). To survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction. *Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000). To demonstrate Article III standing, a plaintiff must show: "(1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor." *Human Life of Wash. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) (quotations omitted). This set of requirements makes up the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### 1. False Advertising

Plaintiff has the burden of proving standing for "each claim" and "for each form of relief sought." *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). All of Plaintiff's claims are premised on allegations that Defendant falsely advertises products on its website; either by labeling products as dietary supplements when the products contain

ingredients that the FDA has labeled "drugs," or by falsely labeling "creatine nitrate" products sold on its website as patented. (Doc. 1 at 3). Plaintiff alleges in Count I that Defendant's false advertising violates the Lanham Act. (*Id.* at 59–60). Plaintiff alleges in Count II that, through Defendant's false advertising, Defendant unfairly competed in the dietary supplement market. (*Id.* at 61). Plaintiff alleges in Count III that Defendant violated the false marking statute by falsely advertising products as "patented." (*Id.* at 61–62). Finally, Plaintiff alleges in Count IV that Defendant acted in concert with other distributors to engage in false advertising, thus creating a civil conspiracy. (*Id.* at 63). Because the parties focus their standing arguments on whether Plaintiff sufficiently pleads an injury-in-fact from Defendant's alleged false advertising, the Court will do likewise.

### a. Injury-in-Fact

Defendant asserts that "Plaintiff provides no facts to establish the nature, contours or extent of any injury, when the injury occurred and whether it is ongoing or isolated." (Doc. 16 at 5). To support its standing argument, Plaintiff claims that it has a unique interest in the dietary supplement market and its business is tied to the general popularity of sports nutrition supplements. (Doc. 19 at 5). Plaintiff argues that it is harmed "when consumers are misled into purchasing any falsely advertised product that competes with any product that contains ingredients that are sourced from [Plaintiff] and/or products that are licensed by [Plaintiff]." (Doc. 1 at 6). As a result, Plaintiff alleges it "suffered, and will continue to suffer damage to its business, reputation and good will and has lost sales and profits that [Plaintiff] would otherwise have made." (*Id.* at 60).

### i. Legal Standard

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 559–60 (citations and quotations omitted). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way," while an injury is concrete if it is "real, and not abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (citations omitted). Determining "injury" for the purpose of assessing Article III standing is a fact-

specific inquiry. *Lujan*, 504 U.S. at 606.

Plaintiff "must satisfy the injury-in-fact requirement by alleging that [it] suffered some threatened or actual injury resulting from the putatively illegal action." *Scott v. Pasadena Unified Sch. Dist.*, 306, F.3d 646, 656 (9th Cir. 2002) (internal quotation marks and citation omitted). Plaintiff may not "rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (citing *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954–55 (9th Cir. 2011) (en banc) (holding that a plaintiff, who did not allege which barriers existed at a store and how the specific barriers impacted his disability, could not establish an injury-in-fact due to a lack of specificity)).

"In a false advertising suit, a plaintiff establishes an Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product." *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (internal quotation marks omitted). An indication that Plaintiff and Defendant are in "direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't 'conjectural' or 'hypothetical.'" *Id.* at 826 (noting that the plaintiffs "compete with defendants for referral revenue" and thus "[s]ales gained by one are thus likely to come at the other's expense" (citation omitted)); *see also Halicki Films LLC v. Sanderson Sales and Marketing*, 547 F.3d 1213, 1229 (9th Cir. 2008) (finding an injury-in-fact where plaintiff submitted two expert reports estimating damages in excess of $7 million dollars); *All. Labs, LLC v. Stratus Pharm., Inc.*, No. CV-12-00927-JWS, 2013 WL 273309, at *3 (D. Ariz. Jan. 24, 2013) (concluding there was an injury-in-fact "because [plaintiff] and [defendant] are competitors, and [plaintiff] alleges that it has suffered direct injury because of [defendant's] trademark infringement and competitive practices with the result being loss of sales and customers").

In the absence of data about lost sales, a plaintiff may allege that it can provide

witness testimony or survey material to show that false advertising would influence consumer choice and, therefore, "establish an injury by creating a chain of inferences" that online advertising harmed a plaintiff's businesses. *TrafficSchool.com*, 653 F.3d at 825; *see also Stahl Law Firm v. Judicate W.*, No. CV-13-1668-TEH, 2013 WL 6200245, at *5 (N.D. Cal. Nov. 27, 2013) (finding no injury-in-fact where the plaintiff only alleged that it and defendant "compete for legal services," and that the defendant's false and misleading advertising "harmed [p]laintiff's ability to compete"); *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 310 F. Supp. 3d 1089, 1112 (S.D. Cal. 2018) (noting the first prong of standing is satisfied because a competitor "provide[d] support to show that [the plaintiff] was injured in fact by losing opportunities to expand into the weight loss supplement market").

### ii. Analysis

Here, Plaintiff and Defendant do not produce competing sources of any ingredient or product. (*See generally* Doc. 1). Plaintiff patents, licenses, and sells ingredients and technology used in the production of dietary supplements. (*Id.* at 5–6). Plaintiff asserts that Defendant's allegedly falsely advertised products compete only with a third party's product that contains ingredients sourced and licensed from Plaintiff. (*See id.* at 21, 27, 32, 38, 42, 48, 53, 57). Plaintiff does not allege that Defendant holds patents in the dietary supplement market, nor that Defendant manufactures or produces any dietary supplements or ingredients used in dietary supplements. (*See id.* at 7–9). Rather, Defendant sells and advertises dietary supplements manufactured by third parties on its website. (*See id.* at 7). While Defendant's target market is consumers of dietary supplements, Plaintiff competes higher up the supply chain by marketing to production companies who use its patented ingredients and technology to manufacture dietary supplements. (*See id.*); *see also TrafficSchool.com, Inc.*, 653 F.3d at 827 (labeling a plaintiff and defendant direct competitors because they both market and sell traffic school and driver's ed courses to the same target market).

The only product Plaintiff specifically names as using its patented creatine nitrate is

Cellucor's C4. (*See* Doc. 1 at 8–9). Cellucor's C4 is also the only product that Plaintiff attempts to link with a competing product sold on Defendant's website, namely APS Nutrition's creatine nitrate product. (*See id.* at 8). This attenuated link between one product sold by Defendant that contains creatine nitrate sourced from Plaintiff—Cellucor's C4—and another product sold by Defendant that is not sourced from Plaintiff—APS Nutrition's creatine nitrate product—does not put Plaintiff and Defendant in direct competition. *See Merck Eprova AG v. Brookstone* Pharm., LLC, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013) (noting that "[the parties] are not direct competitors, insofar as [the plaintiff] does not produce finished consumer products . . ."). Because the parties are not direct competitors, Plaintiff fails to demonstrate that it has a "stake in the outcome of the suit," which is required to show that its alleged injury is not simply "conjectural or hypothetical." *See TrafficSchool.com*, 653 F.3d at 826 (internal quotation marks and citation omitted).

Additionally, Plaintiff does not allege any specific facts pertaining to lost sales data. (*See generally* Doc. 1). Likewise, Plaintiff does not claim that any testimony or survey material exists that could demonstrate Defendant's alleged false advertising influenced customer choices. (*See generally id.*). While Plaintiff insinuates that there is competition between Cellucor's C4 and a third-party's product that is not sourced from Plaintiff, Plaintiff states that Cellucor's C4 is "the world's top-selling pre-workout product." (*Id.* at 6). Plaintiff also acknowledges that Defendant lists Cellucor's C4 as the "top-selling Pre-Workout" supplement on its website. (*Id.* at 8). If anything, these facts undercut any inference that customers are diverted from a "top-selling" product sourced from Plaintiff to a third-party's competing product. (*Compare id.* at 6, *with id.* at 8). Plaintiff does not point to any specific licenses or ingredients for which sales decreased as a result of Defendant's alleged misconduct. (*See generally id.*); *see also Native American Arts, Inc. v. Speciality Merchandise Corp.*, 451 F. Supp. 2d 1080, 1082 (C.D. Cal. 2006) (finding that a plaintiff failed to allege an injury-in-fact because it made only conclusory allegations referring to "competitive injury, advertising injury, and other damages," and did not mention which specific products may have "lost sales" or the extent of such losses (internal

quotation marks omitted)). Accordingly, the Court finds that Plaintiff fails to allege a sufficiently concrete and particularized injury. Because a concrete and particularized injury is required to have standing, Plaintiff fails to establish standing under Article III.[1]

### B. Alternative Holding: Rule 12(b)(6)

Alternatively, the Court addresses whether Plaintiff "state[s] a claim upon which relief can be granted" pursuant to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). Specifically, Defendant argues that Plaintiff fails to assert an injury that falls within the scope of the statutes under which it brings its express claims. (*See* Doc. 16 at 14). A finding that a plaintiff is not within the class of entities able to sue under a statute "is effectively the same as a dismissal for failure to state a claim, and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (internal quotation marks and citation omitted).

#### 1. Legal Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *In re Rigel Pharmaceuticals, Inc. Securities Litig.*, 697 F.3d 869, 875 (9th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "In

---
[1] Because the Court finds that Plaintiff fails to allege an injury-in-fact, the Court need not analyze the causation and redressability requirements of Article III standing.

evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." *Adams v. U.S. Forest Srvc.*, 671 F.3d 1138, 1142–43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

### a. Lanham Act (Count I)

First, Defendant argues that Plaintiff does not adequately state its false adverting claim under the Lanham Act. (Doc. 16 at 2). The Lanham Act creates two distinct bases of liability: false association under 15 U.S.C. §1125(a)(1)(A), and false advertising under § 1125(a)(1)(B). *See Lexmark Int'l, Inc.*, 572 U.S. at 122. Here, Plaintiff only alleges false advertising. (Doc. 1 at 59–60). A prima facia case for false advertising under the Lanham Act requires a showing that:

> (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the *plaintiff has been or is likely to be injured* as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

*Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1096–97 (S.D. Cal. 2017) (emphasis added).

"Additionally, the *Lexmark* Court determined that a plaintiff seeking to pursue a Lanham Act claim must demonstrate standing beyond the typical Article III requirements." *Id.* at 1097 (analyzing, under Rule 12(b)(6), whether the plaintiff's Lanham Act claim satisfied the additional "standing" requirements regarding the injury plaintiff allegedly suffered (citation omitted)); *see also Thermolife Int'l, L.L.C. v. NeoGenis Labs, Inc.*, No. CV-18-2980-PHX-HRH, 2019 WL 1438293, at *6 (D. Ariz. Apr. 1, 2019) (analyzing under Rule 12(b)(6) whether the same Plaintiff had "standing to bring a Lanham Act false

advertising claim" in discussing whether it was in sufficiently close competition with a defendant to suffer an injury).[2]

To meet the additional standing requirements for a Lanham Act false advertising claim, the plaintiff must "fall[] within the 'zone of interests' protected by the Lanham Act." *Bobbleheads.com, LLC*, 259 F. Supp. 3d at 1097 (quoting *Lexmark Int'l, Inc.*, 572 U.S. at 131). The "zone of interest" test is not a particularly demanding one, and the benefit of the doubt goes to the party alleging the cause of action. *Lexmark Int'l, Inc.*, 572 U.S. at 130 (citation omitted). "[T]he test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue." *Id.* (internal quotation marks and citation omitted). Nonetheless, "[t]hough in the end consumers also benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014).

The text of the Lanham Act itself identifies the interests protected by the statute. *See Lexmark Int'l, Inc.*, 572 U.S. at 131. Section 45 of the Lanham Act states:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered

---

[2] The Court observes that there is a "distinction" identified by the *Lexmark* Court, "between an adequate allegation of injury-in-fact for [Article III] standing purposes and the question [of] whether that asserted injury fell within the scope of the statute on which the plaintiff was relying (there, the Lanham Act)." *Casillas v. Madison Ave. Associates, Inc.*, 926 F.3d 329, 340 (7th Cir. 2019) (Wood, J., dissenting from denial of en banc consideration (citation omitted)).

While courts routinely use the term "standing" when analyzing whether a plaintiff adequately pleads a "commercial or competitive injury" under Rule 12(b)(6)—and, therefore, falls within the scope of the Lanham Act—this Court notes that whether a "plaintiff has been or is likely to be injured" is also an element of the claim that a plaintiff must plead to satisfy Rule 12(b)(6). *See, e.g.*, *Bobbleheads.com, LLC*, 259 F. Supp. 3d at 1097; *NeoGenis Labs, Inc.*, 2019 WL 1438293, at *5–6. Accordingly, this Court's analysis is the same regardless of if it analyzes whether Plaintiff pleaded a "commercial or competitive injury," as required to meet a heightened "standing" requirement of the specific statutes on which it relies, or to satisfy the final element required to state a claim under the Lanham Act, both pursuant to Rule 12(b)(6).

> marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127. Therefore, to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege that it suffered "an injury to a commercial interest in reputation or sales", and that injury was proximately caused by Defendant's actions. *Lexmark Int'l, Inc.*, 572 U.S. at 131–32.

### i. Direct Competition

A commercial or competitive injury is "generally presumed . . . when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." *TrafficSchool.com,* 653 F.3d at 826; *see also ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 907 (D. Ariz. 2012), *rev'd in part on other grounds,* 648 Fed. Appx. 609, 616 (9th Cir. 2016) (unpublished) (finding that Plaintiff's Lanham Act claim survived a Rule 12(b)(6) motion to dismiss where Plaintiff manufactured dietary supplements that were in direct competition with the defendant's product and Plaintiff alleged direct diversion of sales to the defendant). However, "a court cannot assume injury without any evidence of causality and consumer deception." *Gaspari Nutrition Inc.*, 648 Fed. Appx. at 616 (citing *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209–10 (9th Cir. 1989)).

As reasoned herein, Plaintiff and Defendant are not direct competitors. *See supra* Part II(A)(1)(a)(ii); *cf. Gaspari Nutrition Inc.*, 648 Fed. Appx at 611 (noting "[plaintiff] does not dispute it directly competed with [defendant] in the market for testosterone booster products"). Accordingly, the Court does not presume Plaintiff suffered a commercial injury. *TrafficSchool.com,* 653 F.3d at 826.

### ii. Indirect Commercial Injuries

However, a plaintiff does not have to be a direct competitor of the defendant to be injured and, therefore, have standing to bring a false advertising claim under the Lanham Act. *See Merck Eprova AG*, 920 F. Supp. 2d at 416 (finding that a plaintiff suffered an

> marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127. Therefore, to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege that it suffered "an injury to a commercial interest in reputation or sales", and that injury was proximately caused by Defendant's actions. *Lexmark Int'l, Inc.*, 572 U.S. at 131–32.

### i. Direct Competition

A commercial or competitive injury is "generally presumed . . . when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." *TrafficSchool.com,* 653 F.3d at 826; *see also ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 907 (D. Ariz. 2012), *rev'd in part on other grounds,* 648 Fed. Appx. 609, 616 (9th Cir. 2016) (unpublished) (finding that Plaintiff's Lanham Act claim survived a Rule 12(b)(6) motion to dismiss where Plaintiff manufactured dietary supplements that were in direct competition with the defendant's product and Plaintiff alleged direct diversion of sales to the defendant). However, "a court cannot assume injury without any evidence of causality and consumer deception." *Gaspari Nutrition Inc.*, 648 Fed. Appx. at 616 (citing *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209–10 (9th Cir. 1989)).

As reasoned herein, Plaintiff and Defendant are not direct competitors. *See supra* Part II(A)(1)(a)(ii); *cf. Gaspari Nutrition Inc.*, 648 Fed. Appx at 611 (noting "[plaintiff] does not dispute it directly competed with [defendant] in the market for testosterone booster products"). Accordingly, the Court does not presume Plaintiff suffered a commercial injury. *TrafficSchool.com,* 653 F.3d at 826.

### ii. Indirect Commercial Injuries

However, a plaintiff does not have to be a direct competitor of the defendant to be injured and, therefore, have standing to bring a false advertising claim under the Lanham Act. *See Merck Eprova AG*, 920 F. Supp. 2d at 416 (finding that a plaintiff suffered an

injury and had standing as a competitor to bring a Lanham Act claim because "[the parties] both produce competing sources of folate for use in dietary supplements"). When companies are not direct competitors, competitive injuries can still be found where companies are involved in the same market if that involvement puts them within the "zone of interest" of the Lanham Act. *See, e.g.*, *Lexmark Int'l, Inc.*, 572 U.S. at 120–121 (finding that the plaintiff—"the market leader [in] making and selling the components necessary to remanufacture Lexmark cartridges"—met the heightened standing requirements under the Lanham Act to sue the defendant—a manufacturer and seller of laser printers—where both parties utilized microchips that could be used in the defendant's cartridges).

A plaintiff, however, does not adequately plead a claim for damages based on damage to its overall market resulting from a defendant's alleged conduct. *See Skydive Arizona, Inc. v. Quattrochi*, No. CV 05–2656–PHX–MHM, 2006 WL 2460595, at *10 (D. Ariz. Aug. 22, 2006) (finding that the plaintiff could not assert a claim based on damage to the skydiving industry as a whole); *Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 179 (3rd Cir. 2001) (noting that the plaintiff's allegations of injury by way of misrepresentations that made the American market for Russian vodka less profitable were too indirect to support its allegations of injury). Conversely, a plaintiff "must allege more than it is the same general business as defendant" and must "allege that it suffered a more direct injury as a result of defendant's alleged false marking and false advertising" of the products sold on its website. *NeoGenis Labs, Inc.*, 2019 WL 1438293, at *6 (finding it insufficient for a plaintiff to merely claim it was "somehow involved in the Nitric Oxide business and that [products marketed by the defendant] have something to do with the Nitric Oxide business"); *see also Thermolife Int'l, L.L.C. v. Compound Solutions, Inc.*, No. CV-19-1473-PHX-SMM, slip op. at *6 (D. Ariz. July 30, 2019) (finding that the same Plaintiff lacked standing for failure to "allege a competitive injury" under similar circumstances).

Here, Plaintiff argues that its involvement in the dietary supplement market is sufficient to plead an injury and confer standing, given that Defendant sells dietary

supplements. (Doc. 19 at 9–10). Plaintiff alleges it maintains "direct participation and economic interest in the 'Sports Nutrition' market and that its business is tied to the success of this market, which is harmed by Defendant's alleged conduct." (Doc. 19 at 10). Plaintiff continues that it is harmed "when consumers are misled into purchasing any falsely advertised product that competes with any product that contains ingredients that are sourced from [Plaintiff] and/or products that are licensed by [Plaintiff]." (Doc. 1 at 6). Yet, general harm to the dietary supplement market is an insufficient basis to support a finding of a commercial injury to Plaintiff. *See Skydive Arizona, Inc.*, 2006 WL 2460595, at *10; *Joint Stock Society*, 266 F.3d at 179. Allegations of harm suffered by companies who purchase Plaintiff's ingredients or use its technology, or by customers who visit Defendant's website, are also insufficient to establish a commercial injury to Plaintiff. *See Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987) (holding that a vendor lacked standing to sue on behalf of its customers under Rule 12(b)(6)).

Moreover, to allege a plausible commercial injury, a "plaintiff must allege some factual support for its allegations." *NeoGenis Labs, Inc.*, 2019 WL 1438293, at *6. Instead, Plaintiff alleges that it "suffered, and will continue to suffer damage to its business, reputation and good will and has lost sales and profits that [Plaintiff] would otherwise have made." (Doc. 1 at 60); s*ee Lexmark Int'l, Inc.*, 572 U.S. at 134 (stating that a showing of an economic or reputational injury "occurs when deception of consumers causes them to withhold trade from the plaintiff"). Plaintiff, however, does not allege any facts to show that the use of its licensed technology or sales of patented creatine nitrate decreased, when the decrease occurred, where sales were diverted to, or how it correlated with Defendant's false advertising. (*See generally* Doc. 1); *see also Rogers v. Conair Corp.*, No. CV-10-1497, 2012 WL 1443905, at *4 (E.D. Pa. Apr. 2, 2012) (holding that a plaintiff's claim that he "suffered economic damages in the form of lost sales and competitive disadvantage" was a mere legal conclusion and insufficient to allege a competitive injury without pleading specific facts to demonstrate the extent and nature of the alleged loss).

Plaintiff also does not allege that companies who use its patented ingredients and

licensed technology suffered a loss of sales. (*See generally* Doc. 1); *cf. Lexmark Int'l, Inc.*, 572 U.S. at 140 (finding that Plaintiff pleaded an injury and, therefore had standing under the Lanham Act, based in part on an allegation that plaintiff's remanufacturers sold 10,000 fewer refurbished cartridges because of Defendant's false advertising, and, therefore, "it would follow more or less automatically that [Plaintiff] sold 10,000 fewer microchips for the same reason"). Because Plaintiff does not allege any facts indicating how its sales or reputation may have been or will be affected by Defendant's alleged conduct, the Court finds that it does not allege a plausible competitive injury. *See Bowe Machine Co. v. Superbolt, Inc.*, No. 13-cv-00008-JAJ-RAW, 2013 WL 12081103, at *10 (S.D. Iowa Dec. 20, 2013) (finding no injury where a plaintiff failed to "compare the prices of Defendant's products and its own or other competitors' products" or allege that the "[d]efendants' sales increased as [plaintiff's] sales decreased").

"The indirectness of the plaintiff's asserted injury most clearly weighs against standing where the defendant's misrepresentations injure the plaintiff only by virtue of the intervening acts of some third party." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 643 F.3d 787, 799 (5th Cir. 2011); *see also Lexmark Int'l, Inc.*, 572 U.S. at 133–34 (remarking that additional standing requirements under the Lanham Act are "generally not [met] when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff"). The Court finds that Plaintiff's conclusory allegations of injury to sales or reputation are not sufficiently supported by alleged facts. *See Rogers*, 2012 WL 1443905, at *4. Accordingly, Plaintiff fails to adequately allege a commercial or competitive injury and, therefore, did not state a claim upon which relief can be granted under the Lanham Act, pursuant to Rule 12(b)(6).[3]

### b. False Marking 35 U.S.C. § 292 (Count III)

Defendant next argues that Plaintiff fails to adequately plead its false patent marking

---

[3] Even if the Court were to find sufficient allegations of a commercial injury, Plaintiff must also allege facts showing that its injuries to reputation or sales were proximately caused by Defendant's false advertising. The Court notes that Plaintiff did not allege any specific facts pertaining to causation. (*See generally* Doc. 1).

claim under 35 U.S.C. § 292. (Doc. 16 at 2). The false marking statute prohibits "mark[ing] upon, or affix[ing] to . . . any unpatented article, the word 'patent' or any word or number importing that the same is patented." 35 U.S.C. § 292(a). The statute further "provides a private right of action to enforce § 292(a) to any 'person who has suffered a *competitive injury* as a result of a violation of this section.'" *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1399 (Fed. Cir. 2015) (quoting 35 U.S.C. § 292(b) (emphasis added)). *Black's Law Dictionary* "defines 'competitive injury' as '[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition[.]'" *Id.* at 1400 (quoting *Black's Law Dictionary* (9th ed. 2009)). Under Ninth Circuit law, an injury is competitive when it is "harmful to the plaintiff's ability to compete with the defendant." *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995) (affirming a district court's dismissal, pursuant to Rule 12(b)(6), of consumers' false advertising action against a light bulb manufacturer because the consumers alleged neither commercial nor competitive injury).

Whether Plaintiff adequately pleads a Section 292 false patent marking claim turns on whether it suffered a "competitive injury." *See Sukumar*, 785 F.3d. at 1399. Plaintiff argues in its Response (Doc. 19) that it suffered "both a diversion of sales and a lessening of goodwill associated with its products." (Doc. 19 at 7). Plaintiff, however, fails to allege any specific facts to support this contention. *See supra* Part II(B)(1)(a); *see also NeoGenis Labs, Inc.*, 2019 WL 1438293, at *6 (dismissing Plaintiff's false marking claim for lack of "standing" under Rule 12(b)(6) on the same reasoning as its Lanham Act false advertising claim; that Plaintiff could not establish it suffered a competitive injury); *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1218 (D. Colo. 2012) (dismissing a plaintiff's Lanham Act and false patent marking claims under Rule 12(b)(6) because it failed to plead specifics of an actual competitive injury; the plaintiff merely asserted that "it could lose or that it could have already lost potential licensees," which is insufficient to give a plaintiff a right to recover under either statute).[4] Accordingly, Plaintiff's false

---

[4] *See supra* n.2; *see also NeoGenis Labs, Inc.*, 2019 WL 1438293, at *5 (addressing whether a plaintiff has "standing to bring a false marking" claim under Rule 12(b)(6), and apart from any discussion of Article III standing; also observing that whether plaintiff "suffered a competitive injury" is a required element of a false marking claim).

1 marking claim cannot survive under Rule 12(b)(6).

### c. Common Law Unfair Competition (Count II)

Next, Defendant argues that Plaintiff's unfair competition claim, which is based on the same false advertising theories as Plaintiff's other claims, should likewise be dismissed. (Doc. 16 at 14). "The Arizona Court of Appeals has held that the common law doctrine of unfair competition 'encompasses several tort theories, such as trademark infringement, false advertising, palming off, and misappropriation.'" *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 983 (D. Ariz. 2015) (quoting *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998)). This claim "share[s] the same analysis" as Plaintiff's Lanham Act claim. *See 3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, No. CV-16-04538-PHX-DGC, 2017 WL 4284570, at *2 (D. Ariz. Sept. 27, 2017) (considering plaintiff's trademark infringement and unfair competition claims together); *see also Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) ("in the Ninth Circuit, claims of unfair competition and false advertising under state statutory and common law are 'substantially congruent' to claims made under the Lanham Act" (quoting *Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994))). Therefore, to state an unfair competition claim based on Defendant's alleged false advertising, Plaintiff must adequately allege that it suffered a commercial injury as a result of the false advertising. *See NeoGenis Labs, Inc.*, 2019 WL 1438293, at *7 (dismissing Plaintiff's unfair competition claim, along with its Lanham Act claims, where the Court found no adequate allegation of a commercial injury from false advertising). As reasoned above, Plaintiff fails to adequately allege a competitive or commercial injury. *See supra* Part II(B)(1)(a). Accordingly, Plaintiff's common law unfair competition claim cannot survive under Rule 12(b)(6).

### d. Civil Conspiracy (Count IV)

Plaintiff's final claim of civil conspiracy incorporates the allegations that form the bases for its other claims. (Doc. 19 at 16). "[C]onspiracy is not an independent tort." *BioD, LLC v. Amnio Tech., LLC*, No. CV-13-1670-HRH, 2015 WL 143811, at *3 (D. Ariz. Jan.

12, 2015) (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 459 (Cal. 1994)). Therefore, the tort of conspiracy "cannot create a duty or abrogate an immunity." *Applied Equipment Corp.*, 869 P.2d at 459; *see also Micro/sys, Inc. v. DRS Techs., Inc.*, No. CV-14–3441-DMG-CWX, 2015 WL 12748631, at *3 (C.D. Cal. Feb. 18, 2015) (dismissing a civil conspiracy claim where Lanham Act claims failed). Rather, it "allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles." *Id.* Accordingly, Plaintiff's civil conspiracy claim is likewise dismissed pursuant to rule 12(b)(6).[5]

### C. Leave to Amend

In its Response (Doc. 19), Plaintiff seeks leave to amend if the Court dismisses the Complaint (Doc. 1). (*See* Doc. 19 at 16). A court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). When a plaintiff requests leave to amend, a court should consider the following factors: (1) undue delay, (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended its complaint. *Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991).

Here, the Court finds that Plaintiff does not have Article III standing, and alternatively finds that Plaintiff does not allege sufficient facts to bring its specific claims under the Lanham Act, false marking statute, and common law doctrine of unfair competition. *See supra* Part II(A)–(B). Given Plaintiff's repeated litigation in this forum, it is not apparent that Plaintiff will be able to cure the defects identified in its Complaint (Doc. 1) because Plaintiff should already be familiar with the requisite pleading standards. *See, e.g.*, *NeoGenis Labs, Inc.*, 2019 WL 1438293, at *7. Nonetheless, as Plaintiff has not yet amended the Complaint (Doc. 1) and because of the liberal policy in favor of amendments embodied in Rule 15(a) and no showing of undue delay, the Court grants Plaintiff leave to amend. (*See* Doc. 19 at 16); *see also, e.g.*, *Mark H. v. Lemahieu*, 513 F.3d

---

[5] Because these claims are being dismissed under Rule 12(b)(6), the Court need not consider Defendant's other argument under Rule 9(b).

922, 939–40 (9th Cir. 2008) (citing *Verizon Del., Inc. v. Covad Comm'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (noting that Rule 15(a) embodies a "policy favoring liberal amendment")). Accordingly, should it choose to do so, Plaintiff must file a First Amended Complaint within thirty (30) days of this Order.

### D. Attorney's Fees

Defendant requests this Court award attorney's fees and costs in alleging that Plaintiff's claims are frivolous and harassing. (Doc. 16 at 18). The Lanham Act and false patent marking statue permit an award of attorney's fees in "exceptional cases." 15 § 117(a); 35 U.S.C. § 285. "An exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The Ninth Circuit interprets the exceptional-cases requirement "rather narrowly." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008) ("Exceptional circumstances can be found when the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith"). Even if a court determines that a case is "exceptional," a court still has discretion to deny attorney's fees. *See Ion Health & Fitness, Inc. v. Octane Fitness, LLC*, Nos. 2011–1521, 2011–1636, 2014 WL 4194609, at *3 (Fed. Cir. 2014) ("The Supreme Court's decision in *Octane* did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases").

Plaintiff recently filed several suits in the District of Arizona and Defendant alleges that Plaintiff is a reputed "patent troll" against retailers of dietary supplements. (*See* Doc. 16 at 2). Although the "line distinguishing exceptional cases from non-exceptional cases is far from clear" and is "especially fuzzy where the defendant prevails due to [a] plaintiff's failure of proof," the Ninth Circuit stated that "an action is exceptional under the Lanham Act if the plaintiff has no reasonable or legal basis to believe in success on the merits." *Secalt S.A. v. Wuxi Shenxi Constr. Machinery Co., Ltd.*, 668 F.3d 677, 687 (9th Cir. 2012). Although the Court finds herein that Plaintiff did not allege sufficient facts to establish

Article III standing, the Court could conceive of a situation in which Plaintiff subjectively believed—even if erroneously so—that its Lanham Act claim was not wholly frivolous. "Insufficient facts to establish subject-matter jurisdiction does not automatically coextend to indicate that there was absolutely no basis for Plaintiff['s] belief that [it] could attain success on the merits." *Dominick v. Collectors Universe, Inc.*, No. CV-12-04782-ODW, 2013 WL 990825, at *4 (C.D. Cal. Mar. 13, 2013) (declining to grant attorney's fees to a defendant after dismissing a case for the plaintiffs' lack of standing to bring suit under the Lanham Act).

Accordingly, the Court concludes that Plaintiff's arguments do not rise to the high-level of frivolity required to award fees against it. *See Secalt S.A.*, 668 F.3d at 687. Defendant's request for attorney's fees and costs is denied.

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant American Fitness Wholesaler's Motion to Dismiss (Doc. 16) is **GRANTED** pursuant to Rule 12(b)(1) for lack of standing.[6]

**IT IS FURTHER ORDERED** granting Plaintiff leave to amend its complaint. Plaintiff must file a First Amended Complaint within thirty (30) days of the date of this Order. If Plaintiff does not file its First Amended Complaint within thirty (30) days, then the Clerk of Court will dismiss this case without further notice and enter judgment accordingly. In accordance with District of Arizona Local Rule Civil 15.1, an amended complaint must "indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." LRCiv 15.1.

///
///
///
///

---

[6] As well as alternatively under Rule 12(b)(6).

**IT IS FURTHER ORDERED** that Defendant American Fitness Wholesaler's request for attorney's fees (contained in its Motion to Dismiss (Doc. 16)) is **DENIED**.

Dated this 15th day of August, 2019.

James A. Teilborg
Senior United States District Judge