1   Cole J. Schlabach (Bar No. AZ-026364)
    cole.schlabach@us.dlapiper.com
2   **DLA PIPER LLP (US)**
    2525 East Camelback Road Suite 1000
3   Phoenix, Arizona 85016-4232
    Tel: 480.606.5100
4   Fax: 480.606.5101
    DLAPHX@us.dlapiper.com
5
    Christopher George Oprison (*pro hac vice*)
6   Chris.Oprison@us.dlapiper.com
    Jordan Allyn Ziegler (*pro hac vice*)
7   jordan.ziegler@us.dlapiper.com
    **DLA Piper LLP (US)**
8   200 South Biscayne Boulevard, Suite 2500
    Miami, Florida 33131-5341
9   Tel: 305.423.8558
    Fax: 305.513.5728
10
    *Attorneys for Defendant*
11  *American Fitness Wholesalers, L.L.C.*

12              **UNITED STATES DISTRICT COURT**

13              **FOR THE DISTRICT OF ARIZONA**

14

15  ThermoLife International, LLC, an
    Arizona limited liability company,          Case No. 2:18-cv-04189-PHX-JAT

16
                            Plaintiff,
17  v.
                                                **DEFENDANT AMERICAN FITNESS**
18                                              **WHOLESALERS, L.L.C.'S MOTION AND**
    American Fitness Wholesalers, L.L.C.,       **MEMORANDUM IN SUPPORT OF**
19  doing business as A1Supplements, a          **MOTION TO DISMISS PLAINTIFF**
    Tennessee corporation,                      **THERMOLIFE INTERNATIONAL,**
20                                              **LLC'S AMENDED COMPLAINT**
                            Defendant.
21

22

23

24

25

26

27

28

Defendant American Fitness Wholesalers, L.L.C., doing business as A1 Supplements ("A1"), moves for an Order dismissing the Amended Complaint of Plaintiff ThermoLife International, LLC ("Plaintiff" or "ThermoLife") with prejudice, and, in support thereof, states as follows:

## INTRODUCTION

The Court dismissed Plaintiff's original Complaint (Doc. 1) on two separate bases—(1) Plaintiff failed to establish standing under Article III, and (2) Plaintiff failed to allege sufficient facts for each of its stated claims which were therefore subject to dismissal pursuant to Rule 12(b)(6). (*See gen.* Order (Doc. 25).) The Amended Complaint (Doc. 29) comes up short in its attempt to cure these deficiencies. Although Plaintiff adds window-dressing paragraphs to the new pleading, these amendments fail to establish how A1, an online retailer multiple levels commercially downstream of Plaintiff, caused any of Plaintiff's purported injuries. Further, Plaintiff's apparent new theory to overcome dismissal—that Plaintiff is the "dominant" actor in its commercial sphere and therefore any loss in sales must be attributable to the actions of A1—is insufficient, implausible, and contradicted by the language of the Amended Complaint.

As the Court previously recognized, A1 and Thermolife are not direct competitors. (Order (Doc. 25), p. 7.) Indeed, as alleged most recently in the Amended Complaint, A1 is an online wholesaler that allegedly sells products made with ingredients or utilizing technology licensed from Plaintiff, alongside products that Plaintiff alleges are falsely advertised and/or marked. (Am. Comp., ¶¶ 63-64.) Plaintiff is therefore not entitled to a presumption that it has suffered a commercial injury as a result of A1's alleged misrepresentations. *See TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011). Further, Plaintiff fails to allege that any testimony or survey material exists that would demonstrate A1's alleged false advertising influenced customer choices. Without such information, and without anything more than a bare allegation of lost sales by Plaintiff (not even by the companies allegedly selling Plaintiff-sourced products), Plaintiff cannot meet the heightened Article III standing requirements or the pleading requirements for the

1

1   false advertising, unfair competition, and false marking claims it raises here.

2       The Amended Complaint suffers from similar, if not identical, shortcomings as those

3   in its original Complaint. Accordingly, all claims fail as a matter of law and should be

4   dismissed with prejudice. A1 is also entitled to recover its attorneys' fees and costs for

5   having to defend against this frivolous lawsuit.

6              **FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT**

7       The Amended Complaint now alleges three claims against A1, for false advertising

8   under the Lanham Act (Count 1), common law unfair competition (Count 2), and False

9   Marking pursuant to 35 U.S.C. § 292 (Count 3). While many of the allegations remain the

10  same, some notable differences exist between the two filings, as noted below.

11      Plaintiff no longer alleges that A1 "unfairly compet[ed] with ThermoLife in the

12  Dietary Supplement market" as it did in the original Complaint (Doc 1, ¶ 1), but rather now

13  alleges that A1 is "[u]nfairly competing with Thermolife Component Products," which

14  Plaintiff states "includes all Dietary Supplement products that include ingredients that are

15  patented, licensed, and supplied by ThermoLife, and/or Dietary Supplement products that

16  include patented technology licensed from ThermoLife." (*See* Am. Compl., ¶¶ 6, 10.) This

17  change, however, merely acknowledges what was implicit in the original Complaint, which

18  is that ThermoLife does not sell or manufacture *products*, but rather at best supplies

19  ingredients and/or licenses technology used in certain dietary supplement products. (*See id.*)

20      The Amended Complaint continues to acknowledge that A1 sells products that

21  contain ingredients and technology sourced and/or licensed from ThermoLife, and, in fact,

22  alleges that "Thermolife Component Products have been and are frequently featured and

23  sold on A1's website." (Am. Compl. ¶ 68.) Plaintiff's primary concern, however, continues

24  to be the notion that A1 allegedly sold "illegal products" alongside those products that were

25  sourced from Thermolife ingredients or technology. (*See id.* ¶¶ 63-64, 73-74.)

26      New to the Amended Complaint is the allegation that "[e]very single sale that A1

27  made of an illegal product should have been a sale of a legal product that competed with

28  the illegal products sold on A1's website . . . ." Amended Complaint ¶ 76. Plaintiff purports

to support this assertion by alleging that the so-called "ThermoLife Component Products" dominate the market such that any sale of such a product necessarily "steals" a sale from Thermolife. (Am. Compl. ¶ 51.) However, Plaintiff's allegations of "dominance" are an exaggeration and demonstrably false based on the Amended Complaint. For example, Plaintiff alleges "[i]n late April, 2019, Bodybuilding.com's list of the *top 10* best-selling preworkout products for 2019 included *three* ThermoLife Component Products . . . ." *Id.* ¶ 45 (emphasis added). Plaintiff also alleges that "on September 4, 2019, FitnessInformant.com . . . rated the top 'PUMP SUPPLEMENTS.' Again, *three of the top five rated supplements* . . . were ThermoLife Component Products." (*Id.* ¶ 50 (emphasis added).) The Amended Complaint does not allege that the other top-selling products (*i.e.* the remaining 7 of 10 products listed by Bodybuilding.com and 2 of 5 products listed by FitnessInformant.com) are the complained-of products that Plaintiff has alleged A1 illegally sold. (*See gen. id.*) Indeed, this does not appear to be the case. Thus, while Plaintiff alleges its products may have been popular, it also concedes they are not the only products on the market, and therefore those products certainly do not "dominate."

Indeed, Plaintiff alleges only that "ThermoLife Component Products were, and still are, *a significant portion* of the most-popular products that competed with these illegal products directly on A1's website." (*Id.* ¶ 76 (emphasis added).) It follows, then, that there is a subset of products that are neither sourced from ThermoLife nor, as the Amended Complaint alleges, illegally sold. In other words, the Amended Complaint alleges that A1 sells a number of competing products, and despite Plaintiff's conclusory allegations to the contrary, there cannot have been a 1:1 correlation between A1's alleged sale of illegal products with lost sales of products sourced from ThermoLife ingredients or technology.

Furthermore, the Amended Complaint continues to rely on the same alleged misrepresentations as those stated in the original Complaint (*compare* Compl. ¶¶ 37, 39 *with* Am. Compl. ¶¶ 62, 64),[1] and does not provide any additional allegation or support as

---

[1] Plaintiff continues to allege that the purported "false statement" for purposes of Lanham Act liability is A1's disclaimer that "These statements have not been evaluated by the Food

3

to how any alleged misrepresentation caused Plaintiff harm. There continue to be no allegations of customer surveys or other evidence showing customer confusion. (*See* Order (Doc. 25), p. 7.) There also continue to be no allegations of lost sales to the companies that Plaintiff alleges rely on its ingredients or licensed technology. (*See id.*, pp. 13-14.) Rather, Plaintiff merely alleges that its own sales dipped in 2016, which purportedly correlated with the entrance of "illegal products" in the market. (Am. Compl. ¶¶ 77-78.) Plaintiff implicitly acknowledges that this allegation is not yet supported by expert testimony or any information about A1's sales. (*See* Am. Compl. ¶¶ 78; 80-81.)[2]

## ARGUMENT

**A.**   **Plaintiff still fails to plead adequate facts establishing it has Article III standing and the Amended Complaint must therefore be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).**

The new allegations to the Amended Complaint fail to rectify the pleading's shortcomings with respect to standing. Accordingly, this Court is without subject matter jurisdiction and this case should be dismissed. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (recognizing that standing pertains to subject matter jurisdiction and is appropriately raised in a Motion to Dismiss under Rule 12(b)(1)).

As the Court is aware, a plaintiff must show the following to demonstrate Article III standing: "(1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor." *Human Life of Wash. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010). Plaintiff has the burden of establishing its standing to sue. *Wash. Envtl. Council. v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013).

---

and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." Am. Compl. ¶ 62. With respect to False Marking, Plaintiff continues to allege that APS Nutrition's "Creatine Nitrate" product is advertised as having "a vastly superior patented creatine." Am. Compl. ¶ 64.

[2] Plaintiff's acknowledgement that it expects information showing A1's sales of both ThermoLife sourced and "illegal products" to be produced "in discovery" (*see* Am. Compl. ¶ 81) undercuts the veracity of its already conclusory allegation that "A1 sold millions of dollars of the illegal products in direct competition with ThermoLife Component Products" at paragraph 75 of the Amended Complaint. Plaintiff's allegation about A1's sales are pure unsupported conjecture designed to circumvent the Court's very clear directive in its prior order of dismissal that Thermolife must have actually sustained an injury.

The "injury-in-fact" requirement is satisfied when a plaintiff pleads sufficient facts showing it "suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2001). A plaintiff is not entitled to "rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

As the Court previously noted, "[i]n a false advertising suit, a plaintiff establishes an Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product." (Order, Doc. 25 p. 5 (*quoting TrafficSchool.com*, 653 F.3d at 825 (9th Cir. 2011)). "Evidence of direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't 'conjectural' or 'hypothetical.'" *TrafficSchool.com*, 653 F.3d at 825-826 (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Where direct competition exists, "[s]ales gained by one [party] are . . . likely to come at the other's expense." *TrafficSchool.com*, 653 F.3d at 825. Thus, parties in direct competition can show an Article III injury by demonstrating direct competition and lost sales. *All. Labs, LLC v. Stratus Pharm., Inc.*, 2:12-CV-00927 JWS, 2013 WL 273309, at *3 (D. Ariz. Jan. 24, 2013) (recognizing that the elements for Article III standing were "met in this case because [plaintiff] and [defendant] are competitors, and [plaintiff] alleges that it has suffered direct injury because of [defendant's] trademark infringement and competitive practices with the result being loss of sales and customers"). As this Court has further recognized, "[i]n the absence of data about lost sales, a plaintiff may allege that it can provide witness testimony or survey material to show that false advertising would influence consumer choice and, therefore, 'establish an injury by creating a chain of inferences' that online advertising harmed a plaintiff's businesses." (Order, Doc. 25 p. 5-6 (*quoting TrafficSchool.com*, at 825 (9th Cir. 2011)).

The Court's Order dismissing the original Complaint found that Plaintiff had "fail[ed] to allege a sufficiently concrete and personalized injury." (Doc. 25, p. 8.) The

1    Court recognized that Plaintiff and Defendant "are not direct competitors," that Plaintiff

2    had failed to "allege any specific facts pertaining to lost sales data," and that Plaintiff had

3    not "claim[ed] any testimony or survey material exists that could demonstrate Defendant's

4    [ ] false advertising influenced customer choices." (*Id.*, p. 7.) The Court further recognized

5    that Plaintiff's allegation that Defendant listed the Plaintiff-sourced Cellucor C4 product as

6    a "top-selling" product undercut any inference of diversion from that product to any third-

7    party's competing products. (*Id.*). Lastly, the Court recognized that "Plaintiff does not point

8    to any specific licenses or ingredients for which sales decreased as a result of Defendant's

9    [ ] misconduct." (*Id.*)

10       The Amended Complaint has done essentially nothing to rectify the threshold issue

11   of standing. First, Thermolife advances no new facts to show direct competition between

12   ThermoLife and A1, primarily because no such facts exist. Thermolife and A1 are not direct

13   competitors. If Thermolife had any such facts, it should have pleaded them. As noted above,

14   labelling certain products "ThermoLife Component Products" simply recognizes that

15   ThermoLife does not sell products, but rather purports to supply ingredients and/or license

16   technology used in certain dietary supplement products, which Thermolife admittedly

17   asserts are sold by A1 alongside products that ThermoLife alleges are "illegal." ThermoLife

18   is a supplier multiple levels above the supply chain from A1, marketing its ingredients and

19   technology to companies that manufacture dietary supplements (Am. Compl. ¶¶ 3-5), while

20   A1 allegedly sells finished products (i.e. dietary supplements) to consumers (Am. Compl.

21   ¶ 53). Accordingly, Plaintiff is entitled to no presumption of a commercial injury arising

22   from direct competition.

23       Furthermore, Plaintiff has not identified any testimony or survey material showing

24   customer confusion or influence over consumer choices. Indeed, Plaintiff continues to assert

25   that its sourced products were listed as "top-selling" products on Defendant's website. (Am.

26   Compl. ¶¶ 63, 70.) The lack of any testimony or survey in support after being given the

27   opportunity to replead means Thermolife has no such evidence and is incapable of obtaining

28   any such evidence. Additionally, Plaintiff has still failed to identify any specific licenses or

ingredients for which its sales decreased as a result of Defendant's alleged conduct.

As noted above, the new allegations in the Amended Complaint are focused on the idea that Plaintiff began to lose an unspecified amount of sales in 2016, correlated with the alleged entrance of purportedly illegal products on the market. Such attenuated facts are insufficient to cure the deficiencies this Court identified in the original Complaint. In addition to the fact that Plaintiff's alleged "lost sales" are not tied to any specific license, ingredient or even third-party finished product, there is nothing tying Plaintiff's alleged losses to Defendant's conduct. Plaintiff relies solely on the conclusory allegation that any sale by Defendant of an allegedly illegal product was a sale "stolen" from Plaintiff. This is unsupported, and undercut by the allegations of the complaint itself. Accordingly, Plaintiff's alleged generalized lost sales are not, standing alone, sufficient to show a commercial injury, and certainly not one caused by Defendant.

With no sufficient allegation of a commercial injury caused by Defendant, Plaintiff has failed to meet its burden of establishing standing. As such, the Court can, and should, dismiss this case for lack of subject matter jurisdiction.

**B.    The Amended Complaint still fails to plead sufficient facts to establish any claims upon which relief could be granted and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).**

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only if the complaint alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a plaintiff need not provide "detailed factual allegations," the allegations must offer more than "labels and conclusions" and consist of more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The Court is not required to accept conclusory allegations, unwarranted factual deductions, unreasonable inferences or legal conclusions as true for purposes of a motion to dismiss. *Snyder v. HSBC Bank USA NA*, 913 F.Supp.2d 755, 767 (Dist. Ariz. 2012). The

"[f]actual allegations must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555.

Claims sounding in fraud must also be pleaded with the requisite degree of particularity under Rule 9(b). *See Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANX), 2010 WL 2674456, at *3 (C.D. Cal. June 30, 2010). Claims alleging false advertising under the Lanham Act, unfair competition and false patent marking are considered fraud-based claims that must be pleaded with particularity. *See Tresona Multimedia LLC v. Legg*, No. CV-14-02141 PHX-DGC, 2015 LEXIS 13179 at *18 (D. Ariz. Feb. 4, 2015) (finding that the heightened 9(b) requirements apply to Lanham Act claims because they sound in fraud); *Wms. & Lake LLC v. Genesis Sys. LLC*, No. 17-cv-117 TUC-CKJ, 2017 WL 6418937, at *7 (D. Ariz. Sept. 13, 2017) (false advertising claim based on fraud); *CollegeNet, Inc. v. Xap Corp.*, No. CV-03-1229-HU, 2004 WL 2303506, at *2 (D. Or. Oct. 12, 2004), report and recommendation adopted as modified, No. CV 03-1229-BR, 2005 WL 708406 (D. Or. Mar. 28, 2005) (applying a heightened pleading standard to Lanham Act violation and common law claim of unfair competition); *In re BP Lubricants USA Inc.,* 637 F.3d 1307, 1310-11 (Fed. Cir. 2011) (requiring particularity for patent marking claims). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Maricopa Cnty. v. Office Depot, Inc.*, No. 2:14-cv-1372 HRH, 2014 WL 6611562, at *3 (D. Ariz. Nov. 21, 2014) (quotations omitted).

    1.   <u>Plaintiff fails to plead adequate facts to support a claim for False and Deceptive Advertising in violation of the Lanham Act or to show a right to sue under the Act, and, thus, Count 1 must be dismissed.</u>

To state a claim for false advertising under the Lanham Act, 15 U.S.C. §1125(a), Plaintiff must plead with particularity facts that establish: (1) A1 made a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) A1

caused its false statement to enter interstate commerce; and (5) Plaintiff has been or is likely to be injured as a result of the false statement. *See Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 244 (9th Cir. 1990).

Additionally, under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014), a case curiously cited by Plaintiff, a plaintiff pursuing a Lanham Act claim must demonstrate that it has a statutory cause of action—*i.e.* further "standing" required by statute. *See also Bobbleheadheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (analyzing under Rule 12(b)(6) whether plaintiff had met additional Lanham Act "standing" requirements); *Thermolife Int'l, L.L.C. v. NeoGenis Labs, Inc.*, No. CV-18-2980-PHX-HRH, 2019 WL 1438293, at *6 (D. Ariz. Apr. 1, 2019) (same).

As this Court previously recognized, Plaintiff's statutory standing to pursue a Lanham Act claim turns on whether its interests "fall within the zone of interests protected by the law invoked," *Lexmark Int'l, Inc.*, 572 U.S. at 129 (2014), which, in this case, means Plaintiff must allege facts sufficient to establish "an injury to a commercial interest in reputation or sales" proximately caused by A1's actions. *Id.* at 131-32. *Lexmark* further requires "that a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." 572 U.S. at 133. "That showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id.* at 133-34.

Plaintiff's amendments have failed to correct its insufficient showing of a competitive or commercial injury that existed in the original Complaint. The Court previously recognized that Plaintiff's allegations of injury in the original Complaint were factually unsupported, and that Plaintiff had failed to "allege any facts to show that the use of its licensed technology or sales of patented creatine nitrate decreased, when the decrease occurred, where sales were directed to, or how it correlated with Defendant's false advertising." (Order, Doc. 25, p. 13). Plaintiff also failed to "allege that companies who use

9

its patented ingredients . . . suffered a loss in sales." (*Id.*, p. 13-14). Likewise, the original Complaint failed to adequately allege causation, as the Court found that even if it "were to find sufficient allegations of a commercial injury, Plaintiff must also allege facts showing that its injuries to reputation or sales were proximately caused by Defendant's false advertising." (*Id.* 14 n.3.) All of these issues remain unfixed.

Plaintiff attempts to argue in its Amended Complaint that, because its ingredients and licensed technologies are allegedly necessary for the function of the so-called "ThermoLife Component Products," Plaintiff is akin to the chip manufacturer in *Lexmark*, and therefore supposedly passes the statutory standing test. (*See* Am. Compl. p. 4 n.3.) This argument, however, contains a fundamental misunderstanding of the Supreme Court's analysis in *Lexmark*. In *Lexmark*, the Court found that

> Static Control adequately alleged proximate causation by alleging that it designed, manufactured, and sold microchips that both (1) were necessary for, and (2) had no other use than, refurbishing Lexmark toner cartridges. . . . It follows from that allegation that any false advertising that reduced the remanufacturers' business necessarily injured Static Control as well. Taking Static Control's assertions at face value, there is likely to be something very close to a 1:1 relationship between the number of refurbished Prebate cartridges sold (or not sold) by the remanufacturers and the number of Prebate microchips sold (or not sold) by Static Control.

*Lexmark Int'l, Inc.*, 572 U.S. at 139. In other words, in *Lexmark*, Static Control was the only supplier of the technology necessary for refurbishing toner cartridges. *Id.* Also, Static Control could show the damages to the entities it supplied, such "that if the remanufacturers sold 10,000 fewer refurbished cartridges because of Lexmark's false advertising, then it would follow more or less automatically that Static Control sold 10,000 fewer microchips for the same reason." *Id.* at 140 (recognizing "that there ordinarily is a 'discontinuity' between the injury to the direct victim and the injury to the indirect victim, so that the latter is not surely attributable to the former (and thus also to the defendant's conduct)") (*internal citations omitted*). In the present case, despite Plaintiff's allegations of "dominance" in the market, by its own admission, there are other leading manufacturers of products that do not rely on Plaintiff's ingredients and technology and who do not engage in the purported illegal sales about which Plaintiff complains. Thus, there is no 1:1 ratio of allegedly illegal

1    products sold by A1 and lost sales by the companies sourced by ThermoLife (whatever

2    those unstated lost sales may be). Particularly considering Plaintiff cannot even state the

3    amount of lost sales by the companies it purportedly supplies, it does not follow that any

4    lost sales are attributable to Defendant's conduct when, according to the Amended

5    Complaint itself, there are other competing ingredients and technology available on the

6    market. As such, Plaintiff has failed to establish that it falls within the "zone of interests"

7    of the Lanham Act, and its claim should therefore be dismissed.

8         Additionally, even if Plaintiff could demonstrate standing, the allegations in the

9    Amended Complaint, like the original Complaint, are neither plausible nor pled with

10   adequate particularity.[3] The Amended Complaint continues to rely on the same allegations

11   of "false statements" for purposes of Lanham Act liability—a disclaimer allegedly

12   appearing on every page of A1's website that "These statements have not been evaluated

13   by the Food and Drug Administration. This product is not intended to diagnose, treat, cure,

14   or prevent any disease." Am. Compl. ¶ 62. Completely missing from the Amended

15   Complaint, however, is any plausible allegation of actual deception (*i.e.* was a substantial

16   segment of the audience deceived or had a tendency to be deceived by any alleged false

17   statement?) or materiality (*i.e.* were consumers actually likely to be influenced by any

18   alleged false statement?). Facts supporting these necessary elements of a Lanham Act claim

19   are not even suggested in the Amended Complaint, let alone pleaded with particularity. The

20   final necessary element of a Lanham Act claim—that Plaintiff has been or is likely to be

21   injured as a result of the alleged false statement—is also unsupported by any factual

22   allegations, as discussed above regarding Plaintiff's lack of both Article III and Lanham

23   Act standing.

24        For the foregoing reasons, Count 1 must be dismissed.

25

26

---

27   [3] The Order dismissing the original Complaint did not reach the issue of plausibility, or
     whether Plaintiff had even pled the necessary elements to state a claim under the Lanham
28   Act. (Order, Doc. 25, p. 14)

2.   <u>Count 2 must be dismissed as it suffers from the same pleading failures as Count 1.</u>

Plaintiff's common law unfair competition claim at Count 2 is qualitatively identical to Count 1 and unchanged from the original Complaint. (*See* Compl. ¶ 238 & Am. Compl. ¶ 299 ("As alleged above, A1 has made false statements of material fact in commercial advertisements about the products sold on its website, including but not limited to the false statements identified above"), Compl. ¶ 240 & Am. Compl. ¶ 301 ("ThermoLife has been injured as a result of A1's false statements"), Compl. ¶ 241 & Am. Compl. ¶ 302 ("ThermoLife has suffered a commercial injury based upon a misrepresentation by A1")). The common law unfair competition claim is analyzed under the same standards as a claim under the Lanham Act. *3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, No. 16-cv-4538 PHX-DGC, 2017 WL 4284570 at *2 (D. Ariz. Sept. 27, 2017). Accordingly, Count 2 fails for the same reasons as Count 1 above and must be dismissed.

3.   <u>Plaintiff fails to plead facts with requisite particularity under Fed. R. Civ. P. 9(b) to state a claim for False Patent Marking in violation of 35 U.S.C. § 292 and, thus, Count 3 must be dismissed.</u>

To state a claim for false patent marking under 35 U.S.C. § 292, Plaintiff must plead with particularity facts that establish: (a) A1 marked an unpatented article, and (b) it intended to deceive the public. *See Bowe Mach. Co. v. Superbolt, Inc.*, No. 3:13-cv-0008 JAJ-RAW, 2013 WL 12081103, at *7 (S.D. Iowa Dec. 20, 2013) (quotations omitted) (citing 35 U.S.C. § 292(a); *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011)). Plaintiff must also plead facts to demonstrate that it "suffered a competitive injury from the false marking." *Id.* (quotations omitted).

"[T]he bar for proving deceptive intent in false marking cases is particularly high," and Plaintiff must "show a purpose of deceit, rather than simply knowledge that a statement is false." *In re BP Lubricants USA Inc.*, 637 F.3d at 1313 (quotations omitted). Plaintiff "must establish both the fact of misrepresentation and the fact 'that the party making it had knowledge of its falsity. . . . [I]n order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not

have a reasonable belief that the articles were properly marked (*i.e.*, covered by a patent)." *Pestube Sys., Inc. v. HomeTeam Pest Def.*, *LLC*, No. CV 05-2832-PHX-MHM, 2008 WL 11448028, at *10 (D. Ariz. Mar. 31, 2008) (internal quotation omitted).

Plaintiff's false patent marking claim continues to revolve around a single allegation—that APS Nutrition's "Creatine Nitrate" product is advertised as having "a vastly superior patented creatine." Am. Compl. ¶ 64. Plaintiff now also asserts that "[s]everal licensees and potential patent licensees have raised with ThermoLife that *products like APS's 'Creatine Nitrate'* are not licensed from ThermoLife, so why should they take a license from ThermoLife" and that "[b]ecause companies *like A1* knowingly allow APS to continue to advertise on their site . . . APS had less incentive to take a patent license from ThermoLife."[4] Am. Compl. ¶¶ 319,320 (emphasis added). These allegations are apparently intended to show a competitive injury from false marking, but they fail on multiple accounts. First, they are entirely unspecific, failing to identify any actual licensees or any fact to support the conclusory allegation that APS would not take a patent license from Plaintiff because of the actions of companies "like A1." Second, there is no competitive injury because Plaintiff does not compete with Defendant, as Defendant *sells Plaintiff-sourced products*. As this Court recognized, "[u]nder Ninth Circuit Law, an injury is competitive when it is 'harmful to the plaintiff's ability to compete with the defendant.'" (Order, Doc. 25, p. 15 (*quoting Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995)).

Further, even if Plaintiff could establish a competitive injury from this alleged conduct, Plaintiff fails to allege any facts establishing that A1 reasonably believed the product or ingredient at issue was falsely marked and acted in spite of that knowledge. Plaintiff additionally fails to show any intent to deceive the public. This is all fatal to Plaintiff's false marking claim. Indeed, this allegation becomes further implausible considering the relationship of Plaintiff to Defendant—as noted above, A1 sells products

---

[4] Plaintiff also alleges that APS is engaged in sales of illegal drugs. (*see* Am. Compl. ¶¶ 138, 186, 208, 225, 265, 282) Apparently, such conduct was not sufficient to deter Plaintiff from attempting to do business with APS by soliciting APS to take a patent license from it.

sourced by Plaintiff, allegedly right alongside the falsely marked products. No allegation provides any motive as to why A1, as a wholesaler of multiple products, would intend to deceive the public into buying a product such as APS' creatine nitrate over products sourced by Thermolife, particularly when A1 sells both products on its website. If Plaintiff's argument is that the purchasing public would have simply bought a ThermoLife-sourced product from A1's website instead of one allegedly falsely marked, it would be illogical to assert that A1 would favor falsely marked products over those sourced by ThermoLife.

Neither is Claim 3 supported or salvaged by the generalized and repetitive allegations that A1 "falsely marketed products," (*id*. ¶ 15), and advertised "intentionally mislabeled, misbranded, adulterated, unsafe, [and] illegal" products, (*id*. ¶¶ 146, 173, 191, 211, 230, 252, 270, 287), with no facts, beyond mere rank speculation, to establish that A1 marked any product whatsoever, or had any knowledge of the alleged falsity of any purported false marking. (*See, e.g., id*. ¶ 317). Needless repetition and rote recitation of incendiary and inflammatory facts is indicative of a fatal void of relevant facts. Plaintiff seeks to either incite the passions of the court or use smoke-and-mirrors tactics to salvage its claims. The Amended Complaint identifies dozens of manufacturers of allegedly misbranded and mismarked products later sold by A1 on its website. The sheer number of *manufacturers* who produced dietary supplements and the labeling and advertising pertaining thereto makes it implausible that A1 would take it upon itself to create false and deceptive advertisements for each product. It is utterly implausible that A1 would independently enter into a conspiracy with each manufacturer who, according to Plaintiff, separately and independently manufactured mislabeled, misbranded, adulterated, unsafe and illegal products for sale as dietary supplements. As implausible as those contentions are, Plaintiff still has failed to plead any specific facts to support such wild accusations. For all of the foregoing reasons, Count 3 must be dismissed.

4.     All claims should be dismissed with prejudice.

Enough is enough. This abusive action by a reputed patent troll has served only to punish A1 for not capitulating to early extortionate settlement demands by Plaintiff. A

court may dismiss a complaint with prejudice where proposed amendments would fail to cure the pleading deficiencies and amendment would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F. 3d 1034, 1041 (9th Cir. 2011). Plaintiff has now had two bites at the apple. Despite having nearly one year since commencement of this action to perfect a complaint that has sufficient facts alleged to support the claims advanced, the Amended Complaint falls far short. Moreover, the Court has already noted Plaintiff's "repeated litigation in this forum" and expressed doubts of Plaintiff's ability to cure its prior pleading defects. (*see* Order, Doc. 25, p. 17.) With its second attempt at pleading, Plaintiff has failed to show it has any standing to sue A1, an entity with whom it does not compete, nor has Plaintiff cognizably pled any claim. It is obvious no facts exist that would allow Plaintiff to proceed with its action against A1. Accordingly, further leave to amend should be denied and the Amended Complaint dismissed *with prejudice*. *See Godwin v. Christianson*, 594 F. App'x 427, 428 (9th Cir. 2015) (no abuse of discretion by dismissing Godwin's first amended complaint with prejudice after concluding futility of further amendment); s*ee also Almeida v. Google, Inc.*, No. C-08-02088 RMW, 2010 WL 1266701, at *1 (N.D. Cal. Apr. 1, 2010) (dismissal with prejudice appropriate where dismissal is based on lack of standing and it is "plainly unlikely that the plaintiff [will be] able to cure the standing problem").

## C.  A1 is entitled to recover attorneys' fees and costs from Plaintiff for having to defend this frivolous and harassing Amended Complaint.

Both the Lanham Act and the false patent marking statute permit an award of attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a)); 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). A court must consider the totality of the circumstances. *Id.* While a party's unreasonable conduct may not be independently sanctionable, a case brought in subjective bad faith or asserting exceptionally meritless claims may nevertheless warrant a fee award. *Id.*

Fees are warranted in this case, now, for multiple reasons. Most importantly, Plaintiff sought and was granted leave to amend, and ultimately submitted the Amended Complaint, which adds no substantive allegation of value. No new allegations supporting Plaintiff's underlying claims were added—rather, Plaintiff continues to rely on a single alleged false statement derived from a disclaimer on A1's website, and a single allegedly falsely marked product sold alongside Plaintiff's products with zero demonstrated intent by A1 to deceive the public. Plaintiff couches these minimal actions into a shotgun-type pleading that relies on ambiguous, conclusory, irrelevant, frivolous and inflammatory allegations concerning A1 and its purported conduct that are designed solely to harass, abuse and extort money from A1 and its owner.

Plaintiff's amendments added little more than window-dressing and a creative yet utterly unsupportable theory that, even though A1 and ThermoLife are nowhere close to direct competitors, ThermoLife's sheer "dominance" in licensing technology and/or selling ingredients meant that any sale by A1 of an allegedly offending product damaged ThermoLife. Such allegations barely constitute new facts. In reality, this is lawyer argument and attempt to plead around a lack of standing. More importantly, it is a waste of everyone's time and money.

Plaintiff goes to great lengths to argue that it is not a patent troll, alleging multiple paragraphs on that topic in the Amended Complaint. (Am. Compl. ¶¶ 28-31.) Plaintiff even accuses undersigned counsel of perpetuating an alleged false narrative based on Plaintiff's convoluted and unsubstantiated explanation as to why an undisturbed court ruling in another case was erroneous. Plaintiff takes a further swipe at undersigned counsel for its refusal to respond to an angry Friday afternoon email demanding the basis for referring to Plaintiff as a patent troll, as if undersigned counsel's willingness to trade offline barbs with Plaintiff's counsel has any relevance whatsoever to the claims asserted in the Amended Complaint. [5]

---

[5] In any event, A1 is neither the first, nor likely the last defendant to acknowledge Plaintiff's patent-troll behavior as recognized by the court in *ThermoLife Int'l, LLC v. Myogenix Corp.*, 13CV651 JLS (MDD), 2017 WL 1235766, at *7 (S.D. Cal. Apr. 4, 2017).

16

1  (*Id.* p. 10 n.9.) It appears Plaintiff expended more effort on this point than it did on framing

2  new factual allegations in support of its claims. This is no coincidence. Lacking any

3  colorable grounds for the claims advanced in the Amended Complaint, Plaintiff has resorted

4  to distraction and diversion tactics. Regardless of Plaintiff's unsupported contention that it

5  should not be labelled a patent-troll, it is undisputed that Plaintiff has filed numerous

6  lawsuits in this district,[6] many of which have been dismissed, and that is has pursued a file-

7  and-settle strategy with litigants including Defendant.

8      Ultimately, ThermoLife's abusive litigation strategy and reputation as a "patent

9  troll," while certainly relevant as to Plaintiff's motivations for bringing this and many other

10  actions, is not dispositive on the issue of granting fees. What does matter is whether the

11  case presents an exceptional circumstance for awarding fees. A1 submits that the utterly

12  inadequate attempt at amendment which apparently required even more than the original 32

13  days ordered by the Court—in the face of stated doubts by the Court as to ThermoLife's

14  ability to amend—is sufficient to justify an award of fees. While the Court noted, with

15  respect to Plaintiff's original Complaint, that it "could conceive of a situation in which

16  Plaintiff subjectively believed—even if erroneously so—that its Lanham Act claim was not

17  wholly frivolous," (Order, Doc. 25, p. 19.) Plaintiff does not have that excuse here. It was

18  warned specifically about its lack of standing, yet it proceeded to "try again" despite the

19  clear inability to show a commercial or competitive injury caused by A1.

20                                    **CONCLUSION**

21      For the reasons stated above, Plaintiff's Amended Complaint should be dismissed

22  with prejudice and an award of fees should be granted to A1.

23  ───────────────

[6] Defendant anticipates that Plaintiff may point to *ThermoLife v. Neogenis*, Case No. 2:18-

24  cv-2980-PHX-HRH as the single example of a case in which its Amended Complaint was
not recently dismissed in its entirety as proof of its non-frivolous litigation in this district.

25  That case, however, involves different allegations, a different patent in ThermoLife's large
portfolio, and a different relationship between the parties (i.e. ThermoLife did not sue a

26  retailer/wholesaler in that action), among other key differences. In any event, only a small
portion of ThermoLife's allegations survived dismissal with prejudice in that matter, and

27  none on the grounds asserted here. *See gen. ThermoLife Int'l, L.L.C. v. NeoGenis Labs, Inc.*,
No. 2:18-cv-2980-PHX-HRH, 2019 WL 4193968 (Sept. 4, 2019).

28

1  DATED this 2nd day of October, 2019.

2                                                          **DLA PIPER LLP (US)**

3                                                          By: *s/ Cole J. Schlabach*
                                                               Cole J. Schlabach
4                                                              cole.schlabach@dlapiper.com
                                                               2525 E. Camelback Rd., Ste. 1000
5                                                              Phoenix, AZ 85016-4245
                                                               Telephone: (480) 606-5101
6                                                              Facsimile: (480) 606-5101

7
                                                               Christopher G. Oprison
8                                                              (admitted *pro hac vice*)
                                                               chris.oprison@dlapiper.com
9                                                              Jordan A. Ziegler
                                                               (admitted *pro hac vice*)
10                                                             jordan.ziegler@dlapiper.com
                                                               200 South Biscayne Boulevard, Suite 2500
11                                                             Miami, FL 33131-5341
                                                               Telephone: (305) 423-8522
12                                                             Facsimile: (305) 675-6366

13                                                             ***Attorneys for Defendant***

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

**CERTIFICATE OF CONFERRAL**

Pursuant to L. R. Civ. 12.1(c), the undersigned certifies that before filing the above motion to dismiss, counsel for Defendant notified opposing counsel of the issues asserted in the motion by telephone conference. The parties were unable to agree that the Complaint is deficient, and were therefore unable to agree as to whether the Complaint is curable in any part by a permissible amendment.

_s/Cole J. Schlabach_
Cole J. Schlabach

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of October, 2019, a copy of the foregoing was filed electronically via the Court's CM/ECF System. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt.

*s/ Tammy Lockard*
Tammy Lockard