**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, | No. CV-18-04189-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| American Fitness Wholesalers LLC, | |
| Defendant. | |

Pending before the Court is American Fitness Wholesalers LLC's ("Defendant") Motion to Dismiss (Doc. 31) the Amended Complaint (Doc. 29). The Motion has been fully briefed. (Docs. 31, 32, 33). The Court now rules on the Motion (Doc. 31).

**I.   BACKGROUND**

Plaintiff ThermoLife International LLC ("Plaintiff") asserts that Defendant is liable for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125, common law unfair competition, and false marking in violation of 35 U.S.C. § 292.

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Plaintiff "currently holds 23 separate and distinct patents that protect its innovative development and use of ingredients in Dietary Supplements and food products."[1] (Doc. 29 at 84). Plaintiff "sells millions of dollars of patented Dietary Supplements ingredients every single year to some of the largest Dietary Supplement

---

[1] Plaintiff seemingly uses the term "Dietary Supplement" to refer to a product that complies with 21 U.S.C. §§ 321(ff), 331.

companies in the industry." (*Id.* at 2). Plaintiff "licenses its technology to Dietary Supplement companies who use nitrates in their formulations in the pre-workout, pump, and performance categories of the sports nutrition market." (*Id.*). "With few exceptions, anytime an amino acid is combined with nitrate(s) and sold and marketed to consumers in a Dietary Supplement[,] the product relies on [Plaintiff]'s patented technology." (*Id.*). Plaintiff refers to these products as "ThermoLife Component Products." (*Id.*). Plaintiff also licenses and sells its patented creatine nitrate. (*Id.* at 11–12).

Defendant sells dietary supplements to consumers on its website. (*Id.* at 19). There, Defendant advertises each product it sells. (*Id.* at 19–20). Plaintiff contends that Defendant falsely advertised certain products on its website as dietary supplements. (*See id.* at 30). More specifically, Plaintiff appears to claim that consumers believe dietary supplements are coextensive with the definition of "dietary supplement" under 21 U.S.C. § 331(ff) and that the term dietary supplement connotes that the product is "safe, natural, and legal." (*Id.* at 26–30). Plaintiff contends that certain products that were sold on Defendant's website were unsafe, not natural, and illegal, which it asserts constitutes false advertising. (*Id.* at 30). Plaintiff also alleges that Defendant sells creatine nitrate products that have no licensing connection with Plaintiff, including APS Nutrition's creatine nitrate product, which is advertised as "a vastly superior patented creatine." (*Id.* at 20–21). For this reason, Plaintiff asserts a false marking claim under 35 U.S.C. § 292. (*See id.* at 84–85).

On August 15, 2019, the Court dismissed Plaintiff's original complaint in its entirety but granted leave to amend. (Doc. 25). Specifically, the Court dismissed Plaintiff's false advertising claim under the Lanham Act, 15 U.S.C. § 1125, common law unfair competition claim, and false marking claim under 35 U.S.C. § 292, as well as a civil conspiracy claim. (Doc. 25). Plaintiff timely filed the Amended Complaint and realleged its original claims sans the civil conspiracy claim. (Doc. 29). Defendant then filed its Motion to Dismiss the Amended Complaint. (Doc. 31).

## II. DISCUSSION

Defendant moves to dismiss each of the Amended Complaint's three claims. (Doc. 31). The Court evaluates each claim in turn.

### a. False Advertising Claim

Defendant first argues that Plaintiff has not adequately stated a false advertising claim under the Lanham Act, 15 U.S.C. § 1125. (Doc. 31 at 4–11). To establish a prima facie case for false advertising, a plaintiff must show:

> (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

*Newcal Indus., Inc. v. Ikon Office Sols.*, 513 F.3d 1038, 1052 (9th Cir. 2008) (citation omitted).

The Supreme Court has determined that a plaintiff asserting a false advertising claim must show that the injury is within the "zone of interests" that the Lanham Act protects and that the injury was proximately caused by a violation of the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–30 (2014). First, "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131–32. Second, to show proximate cause, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133–34; *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (stating a plaintiff establishes a cognizable injury under the Lanham Act "if some consumers who bought the defendant's product under a mistaken belief[,] fostered

by the defendant[,] would have otherwise bought the plaintiff's product" (internal quotations marks, alterations, and citations omitted).[2]

The showing required by *Lexmark* "is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Lexmark*, 572 U.S. at 133–34. Rather, a plaintiff must show, *inter alia*, "that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005). Typically, a plaintiff must allege an inferential chain showing how the defendant's alleged false advertising harmed or could harm the plaintiff's business. *TrafficSchool.com*, 653 F.3d at 825–28. Thus, survey data or other information about consumer behavior is important to establishing a Lanham Act claim for false advertising. *Id.* at 825, 828 (noting that survey data showed that defendants' false advertising was "an important factor[] in consumers' choice" between plaintiffs' product and defendants', which showed defendants could have "capture[d] a larger share of the referral market—to plaintiffs' detriment . . . [by] mislead[ing] consumers").

Plaintiff's central allegation is that "[e]very single sale that [Defendant] made of an illegal product should have been a sale of a legal product that competed with the illegal products sold on [Defendant]'s website." (Doc. 29 at 23–24). From there, Plaintiff alleges that its sales had been going up year after year for five years, until 2016, when its sales dipped. (*Id.* at 24–25). Plaintiff also claims that the term "dietary supplement" "leads

---

[2] The Court notes that the standing analysis that *TrafficSchool.com* employed appears to have been relocated by the *Lexmark* Court's determination that the zone-of-interests test is a question of whether a plaintiff has stated a statutory cause of action rather than a jurisdictional one. *See Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1156 (9th Cir. 2015). *Compare Lexmark*, 572 U.S. at 127–30, *with TrafficSchool.com*, 653 F.3d at 825–26. Nonetheless, the Ninth Circuit's *TrafficSchool.com* opinion regarding whether an injury is cognizable under the Lanham Act is consistent with the *Lexmark* Court's analysis as to what a plaintiff must plead to state a false advertising claim. Moreover, the *TrafficSchool.com* court also evaluated whether plaintiff stated a claim by reviewing whether there was a commercial injury based on misrepresentation about a product and whether the alleged misconduct deceived consumers. *See* 653 F.3d at 826–28. This analysis was nearly identical to the *TrafficSchool.com* court's Article III standing analysis and certainly was in conformity with the *Lexmark* Court's discussion about what is required to state a Lanham Act claim. *Compare id.* at 826–28, *with id.* at 825–26.

consumers to believe that" the allegedly illegal products "are safe, natural, and legal, when they are not." (*Id.* at 30).

Plaintiff has failed to correct the defects found in the original complaint, and thus, again has not sufficiently alleged a competitive injury that was proximately caused by Defendant's alleged false advertising. First, Plaintiff does not allege a competitive injury. Plaintiff and Defendant are not in competition. Defendant is an online wholesaler of dietary supplements. (Doc. 29 at 20; Doc. 31 at 2). Plaintiff, on the other hand, patents, licenses, and sells ingredients that are used in the production of dietary supplements. (Doc. 29 at 2–6). Some products sold on Defendant's site include ingredients sourced and licensed by Plaintiff. (*Id.* at 19–26). Thus, Defendant's market is the consumers of dietary supplements, while Plaintiff targets production companies that may use its ingredients to create the products sold on Defendant's site. To properly plead a Lanham Act claim, a plaintiff must allege the defendant's false advertising was "harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Cal.*, 407 F.3d at 1037. Plaintiff and Defendant are not in the same market, and are thus not in competition. Plaintiff's failure to allege a competitive injury is fatal to its Lanham Act claim.

Additionally, Plaintiff has not properly alleged that Defendant's alleged false advertising caused "consumers . . . to withhold trade from" Plaintiff. *Lexmark*, 572 U.S. at 133–34. Plaintiff has only made conclusory allegations that its sales dropped as a result of Defendant's sale of allegedly illegal dietary supplements. Plaintiff has made no attempt to connect the drop in sales it alleges with Defendant's sale of allegedly illegal products that are advertised as dietary supplements. None of Plaintiff's well-pled factual allegations nudges its claim into the realm of plausibility. There are many "obvious alternative explanation[s]" for Plaintiff's drop in sales, including the potential that other *legal* dietary supplements cut into Plaintiff's profits or that there was a drop in dietary supplement sales across the board. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)). It is for this reason that it is essential for Plaintiff

to include consumer data to support its claims that it was Defendant's alleged false advertising that directly led to a drop in sales. *See TrafficSchool.com*, 653 F.3d at 825–28.

At bottom, Plaintiff has failed to build the chain of inferences showing Defendant's alleged false advertising harmed Plaintiff's business. Plaintiff has offered no survey data and does not allege that it intends to do so. Instead, Plaintiff asserts it "will rely on its own books and records to show the loss in sales." (Doc. 29 at 25). But those allegations are not sufficient. Plaintiff has not alleged any facts to support its claim that the source of its lost sales are from Defendant's alleged false advertising of allegedly illegal products as dietary supplements. Indeed, Plaintiff seemingly embraces this fact, stating in the Amended Complaint, "[a]t trial, [Plaintiff] will show that sales of the falsely advertised illegal drug products sold on [Defendant]'s website that competed with ThermoLife Component Products were sales stolen from [Plaintiff]." (*Id.*). Plaintiff cannot wait until trial to properly plead its Lanham Act claim.

In fact, Plaintiff's claim falls right into the Supreme Court's determination that a plaintiff typically does not state a Lanham Act claim where "the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Lexmark*, 572 U.S. at 133. Plaintiff alleges exactly that; Defendant's alleged deception has affected the companies that use Plaintiff's ingredients, which in turn affects Plaintiff. As noted, Plaintiff must allege facts showing that Defendant's deception caused consumers to withhold trade from Plaintiff as a direct result of Defendant's false advertising. Plaintiff has merely offered conclusory allegations; it has alleged no factual allegations that support its claims that consumer deception led to its alleged drop in sales. *Cf. TrafficSchool.com*, 653 F.3d at 828 (concluding plaintiff stated a false advertising claim, in part, because plaintiff's allegations of consumer deception were supported by survey data).

Plaintiff has also failed to allege facts that establish Defendant's labeling of the allegedly illegal products as dietary supplements deceived the public. Data about the behavior of consumers of dietary supplements is vital to set out such allegations. *See id.* at 825–26, 828. Plaintiff has had more than a year since filing to do so. Plaintiff claims that

Defendant illegally sold products that do not fall within the Federal Food, Drug, and Cosmetic Act's definition of dietary supplement. *See* 21 U.S.C. § 321(ff). However, it is highly implausible that consumers are aware of the Act's definition of dietary supplement, and Plaintiff has made no factual allegations to support such a claim. Nor has Plaintiff set out any facts that indicate consumers equate the term dietary supplements with the terms legal, natural, and safe, as Plaintiff contends. (Doc. 29 at 83). In short, Plaintiff has not sufficiently established that Defendant's alleged misconduct deceived the public. Consequently, Plaintiff has not properly alleged a cognizable injury under the Lanham Act. *ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 648 F. App'x 609, 616 (9th Cir. 2016) (stating, when evaluating a Lanham Act claim, "a court cannot assume injury without any evidence of causality and consumer deception" (citing *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209–10 (9th Cir. 1989))).

Moreover, Plaintiff's apparent attempt to step into the shoes of the Federal Drug Administration must fail. Plaintiff alleges that Defendant's sale of the allegedly illegal products violates 21 U.S.C. § 331 because Plaintiff asserts these products do not qualify as a "dietary supplement" under 21 U.S.C. § 321(ff). But, the Federal Food, Drug, and Cosmetic Act does not establish any private right of action. *Ginochio v. Surgikos, Inc.*, 864 F. Supp. 948, 956 (N.D. Cal. 1994) (collecting cases that state "there is no private cause of action for violations of the [FDCA]"). And, the Lanham Act does not create a cause of action for consumer deception alone. That is, Plaintiff cannot establish a false advertising claim by simply suggesting that consumers have been deceived into believing that the allegedly illegal products sold on Defendant's site are "dietary supplements" under 21 U.S.C. § 321(ff). Rather, as stated, Plaintiff must allege facts that Defendant falsely advertised products that cost Plaintiff market share. It is this injury that the Lanham Act vindicates; it does not create a general cause of action for false advertising. *See Jack Russell Terrier Network of N. Cal.*, 407 F.3d at 1037.

Accordingly, Plaintiff has not sufficiently pled a false advertising claim against Defendant. Plaintiff's well-pled facts do not allege a cognizable commercial injury under

the Lanham Act that was proximately caused by Defendant. And, Plaintiff has not alleged facts to sufficiently plead that consumers were deceived by Plaintiff's labeling of allegedly illegal products as dietary supplements. Thus, Defendant's motion to dismiss the false advertising claim is granted.

### b. False Marking Claim

Next, Defendant asserts that Plaintiff also failed to adequately plead a false marking claim. The false marking statute prohibits "mark[ing] upon, or affix[ing] to . . . any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public." 35 U.S.C. § 292(a). Thus, a plaintiff asserting a false marking claim must show that the defendant marked an unpatented article and that the defendant intended to deceive the public. *See id.*; *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011).

However, the statute only allows a plaintiff to sue for false marking where the plaintiff "has suffered a competitive injury as a result of a violation." *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1399 (Fed. Cir. 2015) (quoting 35 U.S.C. § 292(b)). An injury is competitive when it is "harmful to the plaintiff's ability to compete with the defendant." *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995); *see also Sukumar*, 785 F.3d at 1402 (stating that "competitive injury" must "result[] from competition"); *see also Injury*, *Black's Law Dictionary* (11th ed. 2019) (defining "competitive injury" as "wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition"); *Competition*, *Oxford English Dictionary* (2d ed. 1989) (defining "competition" as "[r]ivalry in the market, striving for custom between those who have the same commodities to dispose of").

A false marking claim sounds in fraud and must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Juniper Networks, Inc.*, 643 F.3d at 1350. Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In other words, a plaintiff must plead in detail "the

who, what, when, where, and how" of the alleged misconduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted); *see Juniper Networks, Inc.*, 643 F.3d at 1350.

Plaintiff's false marking claim involves the allegation that a product, called APS Nutrition "Creatine Nitrate," was sold on Defendant's website. (Doc. 29 at 85–86). Particularly, this product was advertised as "a vastly superior creatine." (*Id.* at 85). Plaintiff claims that this product does not include a "patented creatine" because "the patented creatine nitrate in this product is not sourced from ThermoLife." (*Id.* at 85–86). Plaintiff contends that it has lost sales and licensing opportunities as a result. (*Id.*).

Plaintiff's false marking claim fails. Plaintiff's task in crafting its false marking claim was to plead facts with particularity. Instead, Plaintiff parrots the elements of a false marking claim with few specific factual allegations and fewer still relevant ones. Plaintiff's claim is deficient under both Federal Rules of Civil Procedure 8 and 9.

There is no competitive injury here because Plaintiff and Defendant are not competitors as they do not vie over the same consumers in the same market. In other words, Plaintiff's ability to compete with Defendant has not been harmed because the parties are not in competition, as discussed above. *See Barrus*, 55 F.3d at 470. This fact alone is fatal to Plaintiff's claim. Moreover, Plaintiff has not pled any specific facts as to whether Defendant knew that the APS Nutrition "Creatine Nitrate" product was falsely marked (assuming it was) or that Defendant intended to deceive the public. Simply put, Plaintiff did not sufficiently plead its false marking claim, and thus, it must be dismissed pursuant to Rule 12(b)(6).

    **c.**    **Unfair Competition Claim**

Finally, Defendant asserts that Plaintiff's unfair competition claim must also be dismissed. Unfair competition "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and misappropriation." *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 ¶ 9 (Ariz. Ct. App. 1998) (citation omitted). However, "[t]he central tort in unfair competition at common law is known as 'palming

off,' or 'passing off,' [which] consists in a false representation tending to induce buyers to believe that the defendant's product is that of the plaintiff." *Id.* ¶ 10 (citations omitted). Plaintiff's complaint alleges, for purposes of its unfair competition claim, that Defendant "made false statements of material fact in commercial advertisements about the products sold on its website." (Doc. 29 at 84).

Plaintiff has not sufficiently alleged that Defendant induced consumers to purchase an allegedly illegal product rather than a ThermoLife Component Product. Indeed, the fact that Plaintiff's false advertising claim fails also means its unfair competition claim fails as these two claims "are 'substantially congruent.'" *See Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)). Additionally, Plaintiff has made no attempt to show that Defendant induced buyers to believe that the allegedly illegal products were ThermoLife Component Products. Plaintiff has simply failed to allege the facts necessary to adequately plead an unfair competition claim. Accordingly, its unfair competition claim is dismissed for failure to state a claim under Rule 12(b)(6).

### d. Conclusion

Plaintiff's claims for false advertising, false marking, and unfair competition are dismissed.

### III. LEAVE TO AMEND

Although Plaintiff has not sought leave to amend its Amended Complaint (Doc. 29), the Court sua sponte raises the issue given that it is dismissing Plaintiff's claims in their entirety. *Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc); *see also* Fed. R. Civ. P. 15(a)(2) (providing that courts should "freely give leave [to amend] when justice so requires"). Leave to amend should not be granted if amendment would be futile. *See Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). Amendment would be futile when the plaintiff cannot cure the defects in its complaint. *See id.*

The Court previously granted leave to amend. (Doc. 25 at 17). At that time, the Court noted that "[g]iven Plaintiff's repeated litigation in this forum, it is not apparent that Plaintiff will be able to cure the defects identified in its Complaint (Doc. 1) because Plaintiff should already be familiar with the requisite pleading standards." (Doc. 25 at 17).

The Court now finds that amendment would be futile as Plaintiff cannot cure the defects in its Amended Complaint (Doc. 29). Plaintiff has been in litigation with Defendant for over a year, and Plaintiff has filed numerous false advertising, false marking, and unfair competition claims in this District that have had similar pleading deficiencies. *See, e.g.*, *ThermoLife Int'l LLC v. Compound Sols. Inc.*, No. CV-19-01473-PHX-SMM, 2019 WL 5448804 (D. Ariz. July 7, 2019). Plaintiff still alleges no facts, such as data from a consumer survey, that connect Defendant's alleged deception with a drop in sales. The Court gathers at this point that the reason for this deficiency is that it is either unwilling or unable to do so. Moreover, in a similar vein, Plaintiff cannot show competitive injury because Plaintiff and Defendant are not competitors. Both the lack of competition between Plaintiff and Defendant and the absence of consumer data supporting Plaintiff's allegations of deception are fatal to Plaintiff's claims. The Court therefore dismisses the Amended Complaint with prejudice as the Court finds that Plaintiff cannot cure the pleading deficiencies identified herein.

## IV. ATTORNEYS' FEES

Defendant requests attorneys' fees because it asserts that Plaintiff's claims are frivolous and harassing. (Doc. 31 at 16–18). The Lanham Act and false marking statute permit an award of reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 117(a); 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). A case is exceptional when it fails to "raise[] debatable issues of law and fact." *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (citation omitted).

The Ninth Circuit interprets the exceptional-cases requirement "rather narrowly." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008) (citation omitted) ("Exceptional circumstances can be found when the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith."). While "[t]he line distinguishing exceptional cases from non-exceptional cases is far from clear" and "is especially fuzzy where the *defendant* prevails due to [a] plaintiff's failure of proof," the Ninth Circuit has stated that "an action is exceptional under the Lanham Act if the plaintiff has no reasonable or legal basis to believe in success on the merits." *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 687 (9th Cir. 2012), *abrogated on other grounds*, *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (en banc) (per curiam).

The Court previously denied Defendant's request for attorneys' fees when it dismissed Plaintiff original complaint (Doc. 1). (Doc. 25 at 18–19). At that time, the Court found that Plaintiff's complaint (Doc. 1) "was not wholly frivolous." (*Id.* at 19). The Court now finds that Plaintiff's statutory claims under the Lanham Act, 15 U.S.C. § 1125, and false marking statute, 35 U.S.C. § 292, are wholly frivolous, and Defendant is entitled to its reasonable attorneys' fees that were incurred in filing the Motion to Dismiss these claims (Doc. 31).

The Court need not reiterate the basic, fundamental deficiencies in Plaintiff's statutory claims. Plaintiff simply failed to "raise[] debatable issues of law and fact," indicating these claims are frivolous. *Stephen W. Boney, Inc.*, 127 F.3d at 827. Indeed, most egregious is that the Court laid out what Plaintiff needed to do to properly plead its false advertising and false marking claims. This fact illustrates that Plaintiff "ha[d] no reasonable or legal basis to believe in success on the merits" because it simply failed to cure the deficiencies that the Court outlined in its order dismissing Plaintiff's statutory claims (Doc. 25). *See Secalt S.A.*, 668 F.3d at 687. The fact that Plaintiff has not alleged any facts relating to consumer deception, based on data, or facts illustrating a competitive injury impels the Court to find that Plaintiff's statutory claims are objectively groundless, and thus, frivolous.

*See Express LLC v. Forever 21*, No. CV0904514ODWVBKX, 2010 WL 11512410, at *4 (C.D. Cal. Nov. 15, 2010).

In short, leave to amend is not an invitation to amend. Plaintiff's Amended Complaint is frivolous because it did not raise debatable issues of law and fact and it is objectively unreasonable that the facts Plaintiff pled would lead it to believe it had a reasonable basis to believe it could attain success on the merits. Defendant's request for attorneys' fees is granted but is limited to the reasonable fees it incurred in filing the Motion to Dismiss (Doc. 31) count 1 (the Lanham Act, 15 U.S.C. § 1125, claim) and count 3 (the false marking statute, 35 U.S.C. § 292, claim) of the Amended Complaint (Doc. 31 at 82–83 (count 1), 84–85 (count 3)).

## V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant American Fitness Wholesalers LLC's Motion to Dismiss the Amended Complaint (Doc. 31) is **GRANTED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Clerk of Clerk shall enter judgment dismissing all claims with prejudice.

**IT IS FURTHER ORDERED**, based on the Court's finding that counts 1 and 3 of the Amended Complaint are frivolous, that Defendant American Fitness Wholesalers LLC's request for attorneys' fees (contained within the Motion to Dismiss (Doc. 31)) is **GRANTED**, but only to the extent entitlement has been shown. Defendant American Fitness Wholesalers LLC must establish the amount of its reasonable attorneys' fees by motion. This motion must be filed within fourteen days of the date that this Order is filed. The motion for attorneys' fees must be limited to reasonable attorneys' fees incurred in filing the Motion to Dismiss (Doc. 31) counts 1 and 3 of the Amended Complaint (Doc. 29). The motion for attorneys' fees must be in accordance with Local Rule of Civil Procedure 54.2. The motion for attorneys' fees must be accompanied by an electronic spreadsheet, to be e-mailed to the Court and opposing counsel, containing an itemized statement of legal services with all information required by Local Rule 54.2(e). This

spreadsheet shall be organized with rows and columns and shall automatically total the amount of fees requested so as to enable the Court to efficiently review and recompute, if needed, the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the moving party of its burden under Local Rule 54.2(d) to attach all necessary supporting documentation to its memorandum of points and authorities filed in support of its motion. A party opposing a motion for attorneys' fees shall e-mail to the Court and opposing counsel a copy of the moving party's spreadsheet adding any objections to each contested billing entry (next to each row, in an additional column) so as to enable the Court to efficiently review the objections and recompute the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the nonmoving party of the requirements of Local Rule 54.2(f) concerning its responsive memorandum.

Dated this 10th day of January, 2020.

James A. Teilborg
Senior United States District Judge