**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, | No. CV-18-04189-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| American Fitness Wholesalers LLC, | |
| Defendant. | |

Pending before the Court is Defendant American Fitness Wholesalers LLC's Motion for Attorneys' Fees (Doc. 36). The Motion has been fully briefed (Doc. 36; Doc. 39-1;[1] Doc. 43; Doc. 44). The Court now rules on the Motion (Doc. 36).

**I.    BACKGROUND**

Plaintiff sued Defendant for: (1) false and deceptive advertising under the Lanham Act, 15 U.S.C. § 1125; (2) false patent marking under 35 U.S.C. § 292; (3) unfair competition under Arizona state law; and (4) civil conspiracy under Arizona state law. (Doc. 1 at 59–64). The Court dismissed the Complaint (Doc. 1) under Federal Rule of Civil Procedure 12(b)(1), and alternatively, under Rule 12(b)(6). (Doc. 25 at 19 & n.6). Plaintiff then filed an amended complaint, alleging only three claims: (1) false and deceptive advertising in violation of the Lanham Act, 15 U.S.C. § 1125; (2) false patent

---
[1] Defendant did not properly file its memorandum in support of the Motion for Attorneys' Fees (Doc. 36). Defendant refiled the memorandum as an attachment to a notice of errata (Doc. 39). (Doc. 39-1). The Court will refer to the pending Motion as Doc. 36 but when discussing the substance of the Motion (Doc. 36), it will cite to Doc. 39-1.

1  marking under 35 U.S.C. § 292; and (3) unfair competition under Arizona state law.
2  (Doc. 29 at 82–86).

3  Defendant moved to dismiss the Amended Complaint (Doc. 29). (Doc. 31). Defendant also requested attorneys' fees within its motion to dismiss. (*Id.* at 16–18). The Court granted the motion to dismiss (Doc. 31)—again under Rule 12(b)(1), (6)—and found that "Plaintiff's statutory claims under the Lanham Act, 15 U.S.C. § 1125, and false marking statute, 35 U.S.C. § 292, are wholly frivolous, and Defendant is entitled to its reasonable attorneys' fees that were incurred in filing the Motion to Dismiss these claims (Doc. 31)." (Doc. 34 at 12). The Court then held that, before the Court would award attorneys' fees to Defendant, Defendant was required to file a motion for attorneys' fees that complied with District of Arizona Local Rule of Civil Procedure 54.2. (Doc. 34 at 13–14). The Defendant then filed the pending Motion at bar. (Doc. 36).

## II. LEGAL STANDARD

Both the Lanham Act and the false marking statute provide for fee shifting in "exceptional cases." *See* 15 U.S.C. § 1117(a) (Lanham Act); 35 U.S.C. § 285 (false marking statute). The fees requested by the prevailing party must be "reasonable." *See* 15 U.S.C. § 1117(a); 35 U.S.C. § 285. A fee award that is based on the lodestar method—that is, the number of hours reasonably expended multiplied by the reasonable hourly rate—is presumptively reasonable. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).

Local Rule 54.2 provides the procedural vehicle for seeking an award of reasonable attorneys' fees. *See* LRCiv 54.2(b)–(e). The rule requires, among other things, that a party seeking attorneys' fees file: (1) a memorandum in support of the motion for attorneys' fees that includes a discussion of the reasonableness of the requested award, (2) any necessary supporting documentation, and (3) a task-based itemized statement of fees and expenses. *Id.*

The party seeking fees must show the amount of fees requested is reasonable. *See Aviva USA Corp. v. Vazirani* (*Aviva USA Corp. I*), No. CV-11-0369-PHX-JAT, 2012 WL

2503962, at *1 (D. Ariz. June 28, 2012). Therefore, the task-based itemized statement required under Local Rule 54.2(e) "must adequately describe the services rendered so that the reasonableness of the charge can be evaluated." LRCiv 54.2(e)(2). Once the party establishes that the sought amount of fees is reasonable, the burden shifts to the party opposing the motion to show that the fee amount requested is not reasonable by separately identifying each time entry or expense item it disputes. *See* LRCiv 54.2(f); *Aviva USA Corp. I*, 2012 WL 2503962, at *1.

**III. ANALYSIS**

There is no dispute that Defendant is the prevailing party as the Court granted Defendant's motion to dismiss (Doc. 31) with prejudice. *ANT v. McPartlin*, No. CV 09-7672 PSG RZX, 2010 WL 4572690, at *2 (C.D. Cal. Nov. 2, 2010). Defendant seeks $70,073 in attorneys' fees. (Doc. 39-1 at 7). Plaintiff responds that Defendant can only recover $20,262.40 (Doc. 43 at 8). The Court has reviewed the materials submitted, including Defendant's task-based itemized statement, (Doc. 36-1 at 10–11), and now reviews Defendant's fee request.

    **a.    Number of Hours Reasonably Expended**

The Court begins its analysis by calculating the number of hours reasonably expended on Defendant's motion to dismiss the Amended Complaint (Doc. 31).

        **1.    Ineligible Fee Entries**

As noted above, the Court previously determined that Defendant is entitled to an award of attorneys' fees as a result of Plaintiff's frivolous claims under the Lanham Act, 15 U.S.C. § 1125, and false marking statute, 35 U.S.C. § 292. *See* 15 U.S.C. § 1117(a) (Lanham Act); 35 U.S.C. § 285 (false marking statute). Specifically, the Court held, "Defendant's request for attorneys' fees is granted *but is limited* to the reasonable fees it incurred in filing the Motion to Dismiss (Doc. 31) count 1 (the Lanham Act, 15 U.S.C. § 1125, claim) and count 3 (the false marking statute, 35 U.S.C. § 292, claim) of the Amended Complaint." (*See* Doc. 34 at 13 (emphasis added)). Through this holding, the Court sought to make clear that Defendant was only entitled to attorneys' fees it incurred

in seeking dismissal of the first and third counts of the Amended Complaint (Doc. 29 at 82–86).

Yet, Defendant claims it is entitled to fees for tasks going back to February 2019.[2] (*See* Doc. 39-1 at 5; *see also* Doc. 36-1 at 7, 10). The Court already held that Defendant did not show that it was entitled to fees incurred in filing the motion to dismiss the original Complaint (Doc. 16). (Doc. 25 at 20). The Court implicitly embraced that holding when it specified that entitlement to fees is "limited to the reasonable fees [Defendant] incurred in filing the Motion to Dismiss (Doc. 31) count 1 (the Lanham Act, 15 U.S.C. § 1125, claim) and count 3 (the false marking statute, 35 U.S.C. § 292, claim) *of the Amended* Complaint." (Doc. 34 at 13 (emphasis added)). The Court will therefore deduct the total amount of fees incurred from all entries dated prior to the filing of the Amended Complaint (Doc. 29) on September 18, 2019. That leaves Defendant with a total of 84.3 hours or $60,786 left in fee entries.[3]

---

[2] In Plaintiff's Response, it makes a somewhat converse argument, albeit in a footnote, that the Court erred by finding that Defendant is entitled to attorneys' fees. (Doc. 43 at 2 n.1). First, Plaintiff's attempt to protest the Court's finding that Defendant is entitled to attorneys' fees, (Doc. 34 at 11–13), is an improper, untimely motion for reconsideration. *See* LRCiv 7.2(g). Second, the Court is not persuaded by the case law Plaintiff cites in support of its claim that the Court erred. (Doc. 43 at 2 n.1; Doc. 43-1 at 2–37). That out-of-circuit case law is inapposite as the claims that went forward in those cases were between *manufacturers* who compete with each other in the dietary supplement market. *BPI Sports, LLC v. ThermoLife Int'l LLC*, 19-60505-CIV-SMITH, slip op. at 2 (S.D. Fla. Jan. 8, 2020) (order denying, in part, motion to dismiss) ("[The plaintiff] competes with ThermoLife in the creatine market."); *ThermoLife Int'l LLC v. Vital Pharm. Inc.*, No. 19-CV-61380, 2019 WL 4954622, at *2–3 (S.D. Fla. Oct. 8, 2019) ("[P]roducts containing [Plaintiff's] creatine nitrate compete directly with [the defendant]'s 'Super Creatine'-containing products."). In contrast, here, as noted in the order dismissing the Amended Complaint, (Doc. 34 at 5), Defendant is not in competition with Plaintiff because Defendant is a wholesaler of dietary supplements. In short, there is no reasonable basis upon which Plaintiff could have believed it suffered a cognizable competitive injury under either the Lanham Act, 15 U.S.C. § 1125, or the false marking statute, 35 U.S.C. § 292, especially in light of the fact that the Court's order dismissing the original Complaint (Doc. 25) specifically outlined what Plaintiff needed to do to properly plead a competitive injury.

[3] It appears there is an error in the spreadsheet filed by Defendant. The spreadsheet provides that the total amount of time entries equals 88.6 hours. (Doc. 36-1 at 10–11). However, the entries actually add up to a total of 101 hours. (*See id.*). Of those 101 hours, 16.7 hours were related to entries dated before September 18, 2019. (*Id.*). After subtracting 16.7 hours from 101 hours, the remainder is 84.3 hours.

Defendant also claims it is "entitled to an award of its reasonable attorneys' fees related to dismissal of the entire Amended Complaint, as Count 1 and Count 2 are inextricably intertwined." (Doc. 39-1 at 4 (citing *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000))). However, the Court must attempt to apportion the entries between the claims before it can say that the claims are inextricably intertwined such that "it is impossible to differentiate between work done on [the] claims." *Gracie*, 217 F.3d at 1070. Indeed, the Court has a "duty to make some attempt to adjust the fee award to reflect, even if imprecisely, work performed on non-Lanham Act claims." *Id.*

As Plaintiff points out, Defendant's itemized statement of attorneys' fees, (Doc. 36-1 at 10–11), includes vague entries that make it difficult, if not impossible, to determine how much time Defendant spent on the state law unfair competition claim. (Doc. 43 at 4). Nonetheless, "the impossibility of making an *exact* apportionment does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment." *Gracie*, 217 F.3d at 1070.

Defendant clearly did some work on the portion of the motion to dismiss (Doc. 31) that discussed the unfair competition claim. In fact, Defendant lists various general tasks that were performed on the motion to dismiss (Doc. 31), such as comparing the allegations in the Amended Complaint (Doc. 29) to the allegations in the original Complaint (Doc. 1) for a total of 3.6 hours as well as drafting, reviewing, and revising the motion to dismiss (Doc. 31)—which of course included the portion of the motion to dismiss (Doc. 31) that dealt with the unfair competition claim—for a total of 34.5 hours. (Doc. 36-1 at 10–11). In all, Defendant claims that 55.7 hours were spent on tasks related to drafting, revising, and filing the motion to dismiss.[4] (*Id.*)

---

[4] The Court notes that it will later reduce time spent on the entries it is including within these 55.7 hours. However, Defendant claims that 55.7 hours is the actual amount of time it spent on drafting the motion to dismiss the Amended Complaint (Doc. 31), (Doc. 36-1 at 5, 10–11), and thus, it is the appropriate number to extrapolate the amount of time ultimately spent on drafting the portion of the motion to dismiss (Doc. 31) that dealt with the unfair competition claim.

Defendant asserts that the Court should apportion no more than one hour of work to the unfair competition claim, but it provides no basis for that number. (Doc. 39-1 at 4 n.1). The Court will apportion based on extrapolating the amount of time expended on the unfair competition claim from the number of pages devoted to the unfair competition claim. *See Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*, No. C06-312Z, 2009 WL 10676467, at *3 (W.D. Wash. Jan. 8, 2009) (performing a similar calculation). The motion to dismiss included about half-a-page on the unfair competition claim. (Doc. 31 at 13). There were seventeen pages of substance total. (Doc. 31). Therefore, approximately 2.94% of the motion to dismiss was devoted to the unfair competition claim. Taking 2.94% of the total time spent on the motion to dismiss—55.7 hours—comes to about 1.64 hours.

The Court will round to two hours as it was Defendant's burden to articulate the reasonableness of its fees, and it chose, for whatever reason, not to explicitly detail how much time it spent on the unfair competition claim. That failure is especially egregious given that Defendant gains from a lower number of hours being apportioned to the unfair competition claim (as Defendant is not entitled to fees based on time spent for that claim). Therefore, the Court apportions two hours of the fee entries to the unfair competition claim and deducts those two hours from the 84.3 hours spent working on the motion to dismiss (Doc. 31) (and reply (Doc. 33)) after September 18, 2019. The amount of fees deducted is $1,380 (two hours of defense attorney Cole Schlabach's time at an hourly rate of $690).[5]

Defendant also claims, in the Reply (Doc. 44), that it is entitled to fees—totaling $10,350—for fifteen hours of work done on the Motion for Attorneys' Fees (Doc. 36) and Reply (Doc. 44). First, Defendant did not raise its asserted entitlement to these fees until the Reply. (Doc. 44 at 8–9). The Court need not, and will not, find an entitlement to fees raised for the first time in a reply brief as it deprives the opposing party of the opportunity to respond. *See Neal v. Neal*, No. CV-16-08291-PCT-DLR, 2017 WL

---

[5] Defendant states that any reduction of the fee award resulting from an apportionment should be based on defense attorney Cole Schlabach's time. (Doc. 39-1 at 4 n.1).

5989357, at *1 (D. Ariz. Dec. 4, 2017); *see also* LRCiv 54.2(c)(2) (stating that a "party claim[ing] entitlement to fees for preparing the motion and memorandum for award of attorneys' fees" must include a discussion of such entitlement in "[t]he memorandum of points and authorities in support of a motion for award of attorneys' fees"). Accordingly, the Court will not award Defendant fees for work performed on the Motion for Attorneys' Fees (Doc. 36) and Reply (Doc. 44).

In sum, the Court finds that Defendant did not show entitlement to a total of 18.7 hours included in the itemized statement, (Doc. 36-1 at 10–11), as those hours were not related to fees incurred as a result of filing the motion to dismiss count 1 (the Lanham Act claim) and count 3 (the false marking claim) of the Amended Complaint (Doc. 29). Specifically, 16.7 hours of work occurred prior to filing of the Amended Complaint (Doc. 29), and the Court apportioned two hours to the state law unfair competition claim. The total amount of hours left is 82.3, which equates to a total of $59,406 left in fee entries.

### 2. Legal Research Entries

Defendant includes several entries for legal research. A party's entries for legal research "must identify the *specific* legal issue researched." LRCiv 54.2(e)(2)(B) (emphasis added). A time entry that simply states "'research' or 'legal research' [is] inadequate and the court may reduce the award accordingly." *Id.* An entry may be completely excluded for failure to comply with Local Rule 54.2(e)(2). *See Pure Wafer, Inc. v. City of Prescott*, No. CV-13-08236-PCT-JAT, 2014 WL 3797850, at *6 (D. Ariz. July 29, 2014); *Aviva USA Corp. v. Vazirani* (*Aviva USA Corp. II*), No. CV 11-0369-PHX-JAT, 2013 WL 4430921, at *6 (D. Ariz. Aug. 16, 2013).

Each of Defendant's entries for legal research, except one,[6] does not identify the specific legal issue Defendant researched. Entries dated 9/20/2019 and 9/24/2019 state

---
[6] In contrast to the vague entries dated 9/20/2019, 9/24/2019, and 11/6/2019, the entry dated 11/11/2019 indicates that Defendant did legal research on the zone of interest test. (Doc. 36-1 at 11). Consequently, the Court finds that this entry properly identified the specific legal issue researched.

that Defendant did legal research on "Lanham Act and False Marking claims." (Doc. 36-1 at 10). The entry for 11/6/2019 indicates Defendant did "supplemental research re: legal arguments." (*See id.* at 11).

These entries do not identify any specific legal issue, and thus, the Court cannot assess their reasonableness. It is self-evident that Defendant did not identify a specific legal issue by reporting that it researched "legal arguments" in the 11/6/2019 entry. (*Id.*). The entries indicating Defendant did legal research on the "Lanham Act and False Marking claims" do not fare much better. (*Id.* at 10). These two entries are nearly as problematic as the 11/6/2019 entry given that Plaintiff only sought relief for three claims, one under the Lanham Act, one under the false marking statute, and one for unfair competition under state law. Indeed, Defendant admits that the work it did on the state law claim was negligible. (Doc. 39-1 at 4 n.1 (claiming that the Court should only apportion one hour of work to the state law unfair competition claim)). As such, in essence, the 9/20/2019 and 9/24/2019 entries essentially demonstrate that Defendant did legal research on Plaintiff's case. In short, the three entries are inadequate because they say little more than the forbidden entry of "legal research." LRCiv 54.2(e)(2)(B). Accordingly, the Court finds that Defendant failed to articulate a specific legal issue for these entries, and the Court completely excludes these fee entries for failure to conform with Local Rule 54.2(e)(2)(B).

The amount of time billed for these entries is 13.5 hours for a total of $9,315 billed.[7] The Court reduces the award by that much. The remainder is 68.8 hours for a total of $50,091 in billed entries.

---

[7] The Court notes that the 9/20/2019 and 11/6/2019 entries are block-billed as well. Block billing means that entries "lump[] together multiple tasks." *Welch v. Metro. Life Ins.*, 480 F.3d 942, 948 (9th Cir. 2007) (citation omitted). The 9/20/2019 entry reports that defense counsel "[c]onduct[ed] supplemental legal research re: Lanham Act and False Marking claims; prepare[d] detailed outline for Motion to Dismiss." (Doc. 36-1 at 10). The 11/6/2019 entry indicates defense counsel "[d]raft[ed] Reply in Support of Motion to Dismiss; conduct[ed] supplemental research re: legal arguments." (*Id.* at 11). The Court will not allocate any time to these tasks as it was Defendant's burden to properly itemize its task-based statement, and it is impossible for the Court to determine how much time was spent on these tasks from these vague, block-billed entries. *See Welch*, 480 F.3d at 948; *Aviva USA Corp. II*, 2013 WL 4430921, at *6.

### 3. Block Billing

Defendant also engaged in block billing. Block billing is the practice of "lump[ing] together multiple tasks" within a billing statement. *See Welch v. Metro. Life Ins.*, 480 F.3d 942, 948 (9th Cir. 2007) (citation omitted). A party that has block-billed entries has "failed to carry [its] burden" of establishing that these entries are reasonable because it is "more difficult to determine how much time was spent on particular activities." *Id.* (citations omitted). Consequently, the Court may reduce block-billed hours, so long as it articulates "how or why . . . the reduction . . . fairly balance[s] those hours that were actually billed in block format." *Id.* (alterations in original) (internal quotation marks and citation omitted).

The Court finds that three entries—totaling 15.2 hours—were improperly block-billed such that the Court cannot determine the reasonableness of the fees billed.[8] These entries had several tasks listed,[9] and it is not readily apparent how much time was spent on each task, and thus, whether the time spent on each task was reasonable. Compounding the block-billing issue was the fact that these three entries were also vague. Consequently, the Court will reduce the time spent on these entries by twenty-five percent as a result of the inevitable inflation that results from the imprecise record keeping inherent in block billing. *Welch*, 480 F.3d at 948 (noting that a report revealed that block billing can inflate billed hours by about ten to thirty percent); *O'Neal v. Am.'s Best Tire LLC*, No. CV-16-00056-PHX-DGC, 2017 WL 1311670, at *6 (D. Ariz. Apr. 5, 2017); *Aviva USA Corp. II*, 2013 WL 4430921, at *6.

---

[8] The dates for these entries are: 9/30/2019 (one entry totaling 4.8 hours) and 10/1/2019 (both entries totaling 10.4 hours). (Doc. 36-1 at 11).

[9] The Court is not reducing the time for all entries that include multiple tasks. Specifically, the Court will not reduce the time for an entry that includes multiple tasks where the tasks are all interrelated and thus the Court can determine that the time spent on all tasks, in the aggregate, was reasonable or where the entries appear to be "different parts of the same task." *Fitzgerald v. City of Los Angeles*, No. CV 03-01876DDP(RZX), 2009 WL 960825, at *9 (C.D. Cal. Apr. 7, 2009); *see also Haeger v. Goodyear Tire & Rubber Co.*, No. CV-05-02046-PHX-ROS, 2013 WL 12171979, at *2 (D. Ariz. Aug. 26, 2013).

A twenty-five percent reduction of 15.2 hours leaves Defendant with 11.4 hours billed for block-billed entries (equal to $9,441 in fees left from these entries or a reduction of $3,147). That leaves Defendant with 65 hours left in billed entries or $46,944 in fees.

### 4. Entries Including Duplicative or Excessive Work

Plaintiff charges that Defendant included fees that are the result of duplicative or excessive work. (Doc. 43 at 6–8). Principally Plaintiff objects that Defendant spent an excessive amount of time drafting the motion to dismiss the Amended Complaint (Doc. 31) and, more specifically, that it duplicated legal arguments and research from the motion to dismiss the original Complaint (Doc. 16);[10] that the lead partner on the case reviewed too many drafts of the motion to dismiss the Amended Complaint (Doc. 31); and that the Defendant's reply brief (Doc. 33) "should have been completed" more expeditiously. (Doc. 43 at 6–7).

"[D]etermining whether work is unnecessarily duplicative is no easy task." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.* "Findings of duplicative work should not become a shortcut for reducing an award without identifying just why the requested fee was excessive and by how much." *Id.* Accordingly, "the burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices." *Id.* at 1116. A failure to meet that burden will typically result in no reduction. *Id.*

Defendant has submitted a memorandum supporting the Motion for Attorneys' Fees (Doc. 36), a task-based itemized statement of fees and expenses, and attorney

---

[10] The Court notes that it has already deducted 13.5 hours of legal research. *See supra* Section III.a.2. Only one entry for legal research (dated 11/11/2019), totaling 4.9 hours, is left. (Doc. 36-1 at 11). Thus, Plaintiff's challenge to the amount of time spent on legal research is moot.

- 10 -

declarations. (Doc. 36-1; Doc. 39-1). Although the Court has found that specific time entries are inadequate, and has reduced the fee award accordingly, Defendant has otherwise met its burden of showing that the time entries and associated fees that have not yet been deducted (totaling $46,944) are reasonable. *See* LRCiv 54.2(c)(3); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 78 F. Supp. 3d 1289, 1304 (C.D. Cal. 2015) (stating that a party seeking attorneys' fees "need only 'identify the general subject matter of his time expenditures'" (quoting *Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000))).

It is therefore Plaintiff's burden to specifically identify which time entries are not reasonable. *See* LRCiv 54.2(f); *Aviva USA Corp. I*, 2012 WL 2503962, at *1. Plaintiff's conclusory objections to the time it took Defendant to draft its briefs are simply not sufficiently detailed. *Moreno*, 534 F.3d at 1112; *Maki v. N. Sky Partners II LP*, No. CV-15-02625-PHX-SRB, 2018 WL 4042455, at *3 (D. Ariz. May 9, 2018). The Court needs more than a party's say-so to establish that work was duplicative or excessive such that it necessitates a reduction of the fee award. *Moreno*, 534 F.3d at 1112; *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995); *Maki*, 2018 WL 4042455, at *3; *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 898 (E.D. Cal. 2009). Without more, the Court will not second-guess a prevailing party's strategic decisions on the way it spent its time, especially in light of the fact that Plaintiff claimed damages in the "tens of millions of dollars" and also was seeking treble damages and attorneys' fees. (Doc. 29 at 5, 87).

**b.     Hourly Rate**

Plaintiff claims that the hourly rates sought by Defendant are not reasonable. (Doc. 43 at 4). The Court disagrees.

A party seeking fees must prove that the hourly rate sought is reasonable. *See* LRCiv 54.2(d)(4)(B); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "[R]easonable fees 'are to be calculated according to the prevailing market rates in the relevant community . . . .'" *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)); *see also*

*id.* ("Case law construing reasonable fees 'applies uniformly' to fee-shifting statutes . . . ."); *Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange*, No. CV 2:14-676 WBS AC, 2016 WL 4765061, at *2–4 (E.D. Cal. Sept. 12, 2016) (applying the same standard where party sought attorneys' fees under 17 U.S.C. § 1117(a)); *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1164–65 (N.D. Cal. 2015) (applying the same standard for attorneys' fees sought under 35 U.S.C. § 285). The relevant community is the forum where the district court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). Determining prevailing market rates in the relevant community requires comparing the work done in the pending matter with other work done in "equally complex [f]ederal litigation" regardless of the subject matter. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010).

The rate charged by counsel is a good starting point as "the actual rate that [the attorney] can command in the market is itself highly relevant proof of the prevailing community rate." *Elser v. I.A.M. Nat'l Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)); *see Kourtis v. Cameron*, 358 F. App'x 863, 868 (9th Cir. 2009); *Kaufman v. Warner Bros. Entm't Inc.*, No. CV-16-02248-PHX-JAT, 2019 WL 2084460, at *13 (D. Ariz. May 13, 2019). Evidence that counsel has charged her usual hourly rate for the type of work done is evidence that the rate was reasonable. *See Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982). Affidavits, submitted by the moving party's counsel, regarding prevailing fees in the community and rate determinations from other cases are relevant to whether the hourly rate sought is reasonable. *See* LRCiv 54.2(d)(4)(B); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Kaufman*, 2019 WL 2084460, at *12–13. In fact, Local Rule 54.2(d)(4)(B) requires the party seeking fees to submit an affidavit that discusses the reasonableness of the rate sought.

Once the party seeking fees has met its initial burden of showing that the hourly rate sought is reasonable, "[t]he party opposing the fee application has a burden of

rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 60 F.3d at 534–35 (citation omitted). However, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

Defendant submitted the affidavit required by Local Rule 54.2(d)(4)(B), and it discussed factors relating to the reasonableness of the fees incurred—including counsel's experience, the novelty and difficulty of the legal issues presented, the time and labor required, and awards in similar actions—as required by Local Rule 54.2(c)(3). (Doc. 36-1 at 2–8; Doc. 39-1 at 5–7). The affidavit details the experience Defendant's attorneys have. (Doc. 36-1 at 3–4). Defendant's counsel avers that the hourly rates sought are what were actually charged and agreed to by Defendant. (*Id.* at 3–5). Defense counsel charged at or below their standard rates. (*See id.* at 3–4 & n.1; Doc. 50-1 at 2). Defendant's counsel states that he is familiar with the prevailing market rates in Phoenix, Arizona, that the hourly rates sought here are reasonable, and that case law supports that the hourly rates sought are reasonable. (*Id.* at 5–6). Defendant's materials, including the affidavit, support Defendant's assertion that the hourly rates defense counsel charged are reasonable.

Case law in this District also supports the rates sought by Defendant. Here, Defendant's attorneys charged hourly rates of $690 (associate) and $890 (lead partner) per hour.[11] (Doc. 36-1 at 3–4). A senior paralegal also worked on the case for a rate of $355 per hour.[12] (*Id.* at 4–5). In 2012, attorneys working for the firm that represents Defendant were awarded fees based on rates ranging from $525 to $665 per hour as well as $280 per hour for paralegal time. (*Id.* at 5–6 (citing *Fed. Nat'l Mortg. Ass'n v. Home*,

---

[11] The Court notes that it has eliminated all time entries submitted by both an associate who charged $350 per hour and an associate who charged $650 per hour. (Doc. 36-1 at 4). The Court therefore expresses no opinion as to whether those rates are reasonable.

[12] Defendant asserts in its briefing that the paralegal billed at an hourly rate of $360. (Doc. 39-1 at 7). That appears to be an error as the affidavit submitted by defense counsel states that the paralegal's hourly rate was $355. (Doc. 36-1 at 4–5). The itemized task-based statement of fees also supports the $355 number. (Doc. 36-1 at 11).

- 13 -

No. CV-11-01227-PHX-DGC, 2012 WL 10685 (D. Ariz. Jan. 3, 2012) (granting award of attorneys' fees in the amount of $70,192.50 where party prevailed in seeking a default judgment))). Also, in 2012, attorneys, working for the firm representing Defendant here, were awarded $221,451.17 in attorneys' fees based on hourly rates ranging from $459.38 to $520 per hour and up through $750 per hour (which was for lead counsel's time). (Doc. 36-1 at 6 (citing *Veolia Transp. Servs., Inc. v. Evanson*, No. CV 10-01392-PHX-NVW, slip op. at 2 (D. Ariz. Feb. 17, 2012))). Both cases were approximately eight years ago. These cases support Defendant's claim that the hourly rates sought here are reasonable once the Court accounts for the eight-year time gap. *See Van Skike*, 557 F.3d at 1047; *Everts v. Sushi Brokers LLC*, No. CV-15-02066-PHX-JJT, 2018 WL 3707923, at *2 (D. Ariz. Aug. 3, 2018) (noting that prevailing market rates in 2011 were nearly $200 higher than in 2007).

Accordingly, based on the affidavit submitted and case law, the Court finds that Defendant has adequately supported the hourly rates sought. It is therefore Plaintiff's burden, as the nonmovant, to produce evidence in rebuttal showing that the rates sought are not reasonable. *Gates*, 60 F.3d at 534–35.

Plaintiff contends the hourly rates sought here are not reasonable based, in part, on *Kaufman v. Warner Bros. Entertainment Inc.*, 2019 WL 2084460. (Doc. 43 at 4–6). The fact that, in *Kaufman*, this Court found that an hourly rate of $552 was reasonable does not indicate that the higher hourly rates charged here are not reasonable. *See* 2019 WL 2084460, at *12–13. In fact, the Court reasoned that the hourly rate sought was reasonable, in part, because the rate sought was what was actually charged. *Id.* at 13; *see also Kourtis*, 358 F. App'x at 868 (affirming "district court's calculation of an attorney's fee award . . . based on the actual rates charged"). As discussed, the same is true here. Therefore, *Kaufman* cuts against Plaintiff's position.

///

///

///

Plaintiff also relies on survey evidence to suggest that the hourly rates charged here are unreasonable. (Doc. 43 at 5–6). Specifically, Plaintiff argues that the associate who worked on this case should be capped at an hourly rate of $350 based on the 2016 Economics of Law Practice in Arizona survey. (*Id.*).

Again, *Kaufman* undermines Plaintiff's argument. In *Kaufman*, the Court specifically rejected the request to reduce the $552 hourly rate charged to $350 per hour, a rate that was based on the same survey Plaintiff offers. 2019 WL 2084460, at *12. Here, Plaintiff makes no attempt to explain why this survey evidence is relevant to the pending Motion (Doc. 36), nor does it support its claim, based on the 2016 survey, that the $690 hourly rate charged by attorney Cole Schlabach "is almost double the typical hourly rate for this level of experience in Phoenix."[13] (Doc. 43 at 5). Moreover, Plaintiff does not even provide the survey for the Court's review; instead, it simply cites to this Court's analysis rejecting the same survey evidence in *Kaufman*. (*Id.*). At any rate, as discussed above, case law supports prevailing market rates much higher than $350 an hour—another issue Plaintiff fails to grapple with. The Court rejects the 2016 survey evidence once again, especially in light of defense counsel's averments that Defendant paid the hourly rates sought and that the hourly rates charged by counsel's firm here are less than it normally charges.[14]

Other than relying on *Kaufman* and the survey evidence, Plaintiff offers little more than anecdotal conjecture in support of its contention that the hourly rates sought here are not reasonable. (Doc. 43-1 at 39–41). While the avowals of Plaintiff's counsel are

---

[13] Plaintiff asserts that this Court "noted in *Kaufman* [that] $350.00 per hour is the typical rate for attorneys in Arizona with substantial, but not specialized, experience according to a 2016 Economics of the Law Practice survey commissioned by the Arizona State Bar." (Doc. 43 at 5 (citing *Kaufman*, 2019 WL 2084460, at *12)). But, the Court said nothing of the sort. 2019 WL 2084460, at *12–13. The Court instead rejected the survey evidence and said nothing about how the 2016 survey accounted for experience. *Id.* at *12. Indeed, the Court stated the 2016 survey "does little to determine the appropriate billing rate for an attorney in Phoenix that is *experienced* in [intellectual property] litigation." *Id.* (alteration in original) (emphasis added) (citation omitted).

[14] Accordingly, the Court also rejects Plaintiff's complaint that the paralegal's hourly rate of $355 was excessive because Plaintiff again relied only on survey data to support its position. (Doc. 43 at 6 & n.5).

relevant, they are not enough to overcome the evidence that the hourly rates sought are reasonable. The averments of Defendant's counsel in the affidavit, specifically the ones indicating that Defendant paid the rates sought, (Doc. 36-1 at 2–8), and support for the hourly rates sought in the case law show that the hourly rates sought by Defendant are reasonable.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion for Attorneys' Fees (Doc. 36) is **GRANTED** in the amount of $46,944.

Dated this 7th day of April, 2020.

James A. Teilborg
Senior United States District Judge